# W. N. BATEY, d/b/a, etc. v. D. H. OVERMYER WAREHOUSE COMPANY.—446 S.W.2d 686.

Middle Section. March 28, 1969.

Certiorari Denied by Supreme Court October 6, 1969.

312

Butler & Green, Nashville, for complainant-appellant.

John K. Maddin, Jr., Gracey, Buck, Maddin & Cowan, Nashville, for defendant-appellant.

TODD, J. Complainant, W. N. Batey, d/b/a Batey Moving & Storage Company, filed the original bill in this cause to enforce certain lease agreements allegedly made with defendant, D. H. Overmyer Warehouse Company. From a decree partly favorable to complainant and partly favorable to defendant, both parties have appealed.

The original bill alleged that complainant was engaged in the trucking and warehouse business; that defendant was the owner of warehouse property; that complainant and defendant agreed upon terms of a lease of 10,000 square feet of warehouse space; that complainant occupied said space on March 27, 1966 and continuously thereafter; that complainant and defendant thereafter agreed upon the lease to complainant of additional 55,000 square feet in said warehouse, of which 50,000 was sublet by complainant to Avco Corporation with the knowledge and consent of defendant; that thereafter defendant granted to complainant an option or "first refusal" of additional 40,000 square feet in said warehouse; that a written lease prepared by defendant had been executed by complainant and delivered to defendant; that defendant had failed to sign and return to complainant a copy of said lease, but had accepted rental payments thereunder; that defendant denied that a binding lease had been entered into; and that defendant was threatening to dispossess complainant. Complainant tendered into court the amount of monthly rents and prayed for an injunction against eviction, adjudication of his rights, specific performance and damages.

Defendant demurred to the bill on grounds of statute of frauds, inadequate description of property, want of or failure of consideration, and lack of equity shown by the bill.

The chancellor declined to issue the injunction prayed for and overruled the demurrer with leave to rely thereon in the answer.

The answer of the defendant relied upon the demurrer, admitted the residence and occupation of complainant, denied that it was a foreign corporation, alleged that it was a domestic corporation, and generally denied each and every other allegation of the bill.

On February 3, 1967, complainant then filed a supplemental bill alleging that defendant had filed an unlawful detainer suit against him in circuit court and praying that defendant be enjoined from proceeding with said circuit court suit.

On February 28, 1967, a consent order was entered in circuit court over the signature of counsel for both parties. Said order recited that the defendant therein (complainant in this cause) had no defense to that action; that he confessed judgment for $14,895.00 to be increased at the rate of $2,979.16 on the first of each month thereafter until possession of premises should be restored to plaintiff (defendant herein); and that defendant therein confessed judgment for possession of the premises involved. Said consent order awarded judgment for the amounts aforesaid and for possession of the premises.

On March 2, 1967 a consent decree was entered in this cause authorizing the clerk and master to pay to defendant the sum of $14,895.00 accumulated rental previously tendered into court by complainant.

On March 2, 1967 a decree was entered in this cause reciting that complainant's solicitor had stated to the court that complainant had no defense to said action commenced by defendant to circuit court because his defenses could not be asserted in said action at law; that complainant had confessed judgment in said circuit court suit; that the amount of said circuit court judgment $14,895.00 had been paid by complainant to defendant; and that:

"defendant will not resist a temporary injunction, pending disposition of this cause, restraining it from executing upon said judgment of the circuit court conditioned upon: * * *"

The condition referred to above was a $5,000.00 bond by complainant to assure payment of $2,979.16 monthly installments of rent. Said decree ordered the issuance of said injunction on said condition, the bond was executed, and the injunction was issued.

On April 25, 1967, defendant filed an amended answer alleging that complainant entered its warehouse as a tenant at will pending the agreement between the parties upon a lease; that the parties never agreed to a lease; that no option was ever granted, or if it was granted that there was a lack of or failure of consideration thereto; and that the circuit court judgment was conclusive of the dispute between the parties.

The chancellor heard the cause upon depositions; after which he filed a written opinion and entered a decree overruling defendants plea of res judicata, sustaining complainant's rights under a lease marked exhibit 13, making the temporary injunction permanent, and denying the complainant's claim to an option for additional space and damages.

Defendant's first assignment of error asserts two defenses, (1) res judicata and (2) statute of frauds, which must be discussed separately.

■■■ In support of the defense of res judicata, defendant correctly insists that the circuit court proceeding in unlawful detainer related to the identical property, parties and relations involved in the present case and that said proceeding was concluded by a consent order in favor of defendant in this case. Defendant correctly states the general rules that the existence of a valid lease agreement is a complete defense to an action in unlawful detainer and that a determination of a controversy by a court of competent jurisdiction is conclusive of all elements of the controversy which could and should have been presented by either party.

Defendant fails to discuss or explain the remarkable procedure whereby the militant aggressor in chancery was converted into a supine recreant in circuit, confessing a judgment for possession and rents without a trial. Defendant fails to mention or discuss the coincidence that the amount of judgment rendered in circuit court was the exact amount of rent previously tendered by complainant to the clerk and master and ordered paid to defendant by consent decree dated two days after the circuit judgment. Defendant also fails to discuss or explain the decree in chancery dated two days after the circuit judgment reciting that defendant "did not oppose" an injunction against enforcement of the circuit judgment.

The anomaly of procedures, orders, decrees and pleadings is, in the words of Cicero, "mirabile dictu" (marvelous to say).

In Gibson's Suits in Chancery, Fifth Edition, Vol. II, Sec. 860, pp. 60, 62, is found the following:

"The fiat to a bill to enjoin a suit at Law on a money demand should require the defendant to confess judgment at Law as the condition of the injunction; otherwise, the complainant after litigating in Chancery may dismiss his bill and renew the litigation at Law." (p. 60)

* * * * * *

"2. Injunctions against judgment at Law will also be granted when the defendant to the judgment had a good defence on the merits, but one not available in a Court of Law; or if available it was hampered by difficulties, complications, or embarrassments, too confusing and perplexing for investigation and solution by a jury. And it may be stated as a general principle that any facts which prove it to be against conscience, to execute a judgment atLaw, and of which the injured party could not have availed himself in a Court of Law, or of which he might have availed himself but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will authorize a Court of Equity to interfere by injunction to restrain the adverse party from availing himself of such judgment." (p 62)

In 30 C.J.S. Equity sec. 38, p. 844 is found the following:

"*Equitable ground for attack on judgment.* The liability of a judgment at law to attack on equitable grounds does not justify the assumption of jurisdiction by equity before trial of the action, at the instance of a party who is in no wise prejudiced by the law court's

lack of faculty for entertaining equitable defenses and administering equitable relief."

Regardless of the motives of the parties in doing what was done in the circuit and chancery cases, it is evident to this Court, as it was evident to the chancellor, that it would be unjust, inequitable, and unconscionable to exclude the complainant from asserting his rights in this cause because of a circuit court confessed judgment the enforcement of which is even now restrained by an injunction issued in this cause.

The doctrine of res judicata is designed to give every litigant one, but only one, day in court. Because of the ignorance or neglect of litigants, the doctrine sometimes produces strange results. As was stated by the Supreme Court of the United States in Jeter v. Hewitt, 22 How. (63 U.S.) 352, 16 L.Ed. 345:

"Res Judicata renders white that which is black and straight that which is crooked."

There are cases, such as the present case, wherein it is evident that the former judgment was rendered without intent that it be a final adjudication, where the former judgment has been effectively suspended by injunction, and where the blind application of the doctrine would effectively deprive a litigant of a just opportunity to present his grievances. In such cases, the court is justified in declining to apply the doctrine of res judicata.

This Court therefore agrees with the chancellor that the plea of res judicata should be overruled.

The defendant's other ground of its first assignment of error is:

"2. Appellee's cause of action was barred by the Statute of Frauds."

Pertinent portions of Sec. 23-201, T.C.A. are as follows:

"23-201.—*Writing required for action.* No action shall be brought:

\* \* \* \* \* \*

"(4) Upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereon for a longer term than one year; or

\* \* \* \* \* \*

"Unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person by him thereunto lawfully authorized."

The chancellor included in his memorandum opinion the following finding of facts:

"Beginning prior to July 1965 representatives of defendant and complainant entered into negotiations for the leasing by complainant of a portion of defendant's warehouse. The negotiations were carried on until finally on August 5, 1966, defendant mailed complainant its printed form of lease contract dated 1st day of July, 1966, with the blank spaces filled in and three addend*um* attached. At least one other lease had been submitted which complainant refused to sign. Other negotiations took place which resulted in the above referred to lease which was sent to complainant on August 5, 1966. In June 1966 defendant authorized the complainant to sublease 50,000 square feet of the

space under negotiations to Avco and this was accomplished by lease contract dated June 19, 1966 (Exhibit #7 to the proof) and Avco went into possession and has exercised the option contained therein for an extension to June 10, 1968.

"After receipt of said lease dated July 1, 1966, complainant executed two copies and returned them to defendant together with his check for the rent. This check was accepted by defendant and deposited in its bank account. Defendant advised complainant that an additional sum was due and this was paid by check which was also accepted and deposited by defendant. Thereafter defendant refused to execute said lease dated July 1, 1966, and this suit is brought for specific performance thereof.

"The Court is of the opinion that the defendant by its conduct accepted the terms of said lease dated 1st day of July 1966, and made Exhibit #13 to the proof, is bound thereby and a decree will be entered ordering that said lease contract be specifically performed by the defendant. The injunction heretofore entered will be made permanent."

A decree was entered accordingly.

The lease, designated exhibit 13, which was upheld by the chancellor is a four-page instrument prepared by filling in the blanks of a printed form bearing a commercial heading of the name of defendant corporation and the imprint, "(Std.-lease 6/1/65)". Attached to the lease are two printed forms bearing the imprint, "(Std. Lease AD-1-Tax-Gross Lease Revised 5-19-66), Addendum 1", and "(Std. Lease AD-2-Ins.-Gross Lease 6/1/65) Addendum 2". "Addendum 3" is a two-page typed instrument

reciting additional terms of the lease. This combined instrument (four-page lease and four pages of addenda) purports to lease to complainant 65,000 square feet of warehouse space from July 1, 1966 to June 30, 1976 at $2,979.16 per month. It recites that lessee has paid the first payment of $2,979.16 "at the time of the execution of this lease * * *". The said monthly rental is equivalent of 55 cents per square foot per year.

Three copies of the lease agreement were sent to complainant attached to a letter on a letterhead of defendant's Atlanta, Georgia office and signed, "Tom Skinner Southeast Region Administrator". This letter is as follows:

"Dear Mr. Batey:

Attached are three copies of the lease which you and Jim Gilmore agreed upon. All of the changes have been incorporated into this lease and should be agreeable to both parties.

"If you would be so kind to sign the leases and return to this office, we will appreciate it."

On August 26, 1966, complainant wrote defendant's Atlanta office, enclosing two copies of the lease, signed by him, together with his check for $5,041.66 for rent on 55,000 square feet for July and August. This check was endorsed by and deposited to the credit of defendant. On August 30, 1966, the Nashville office of defendant wrote complainant, acknowledging the $5,041.66 check and demanding additional $458.33 because 65,000 feet were occupied during August. The letter does refer to payment of rent to the Nashville office "until such time as the lease is fully executed".

On September 1, 1966, complainant sent defendant his check for the $458.33 demanded, and said check was accepted and deposited to defendant's credit.

The check of $5,041.66 did accurately represent two months rental of 55,000 square feet at 55 cents per square foot year. The check of $458.33 did accurately represent one months rental of 10,000 square feet at 55 cents per square foot year. The combined total of the two checks accurately represented the rental on 55,000 square feet during July and 65,000 square feet during August at the rate of 55 cents per square foot year.

On August 30, 1966, defendant sent complainant an invoice for $2,979.16 for 65,000 sq. ft. at 55 cents per sq. ft. yr. On September 9, 1966, complainant sent to defendant his check in the amount of $2,979.16 which was accepted and deposited to the credit of defendant. The next $2,979.16 payment was tendered with the original bill on October 12, 1966 and subsequent payments were paid to the clerk and master.

Many other exhibits involve dealings prior to and subsequent to the signing of exhibit 13 by complainant, but need not be detailed. Such exhibits portray considerable negotiation between the parties leading up to exhibit 13, the subsequent refusal by defendant to sign exhibit 13, and the attempt by defendant to require complainant to agree to an entirely different lease at a considerable disadvantage to complainant.

This Court agrees with the chancellor that the instruments above described are sufficient to establish ''some memorandum or note thereof * * * in writing, and signed by the party to be charged therewith, or some other per-

son by him thereunto lawfully authorized''. (T.C.A. 23-201).

Many reported cases which have applied the Statute of Frauds to particular writings are annotated under Sec. 23-201 T.C.A. Among the annotations supported by Tennessee decisions are the following:

63. ''It is not necessary that the contract be contained in a single document. It will be sufficient if it can be plainly made out, in all its terms, from any writings of the party, or even from his correspondence.''

\* \* \* \* \* \*

68. ''Party to be charged is not required to sign each paper forming a link in chain of evidence.''

69. ''The signature of a person to a document does not have to be in any specific form, the only question is whether a person has adopted and used as his signature that form, thus a signature may be in writing, by a mark, or by typewriter.''

\* \* \* \* \* \*

71. ''The authority of some other person as agent to sign the writing is not required by the statute to be in writing.''

72. ''The memorandum required by the statute may be signed after the making of the contract.''

The early case of Blair v. Snodgrass, 33 Tenn. 1 (1853) quotes 1 Greenleaf, Sec. 268 to the effect that the statute of frauds does not require the memorandum to be a single instrument and holds:

"The two instruments can be connected without violation of the statute of frauds because they bear date on the same day, relate to the same transaction, are proved by D. Snodgrass to have been executed for the same purpose * * *." p. 7

The later and much cited case of Williams v. Buntin, 4 Tenn.App. 340 (1927) upheld a contract to devise based upon multiple instruments and said:

" 'It has been held that if all the writings adduced to estabish the contract, when viewed together in the light of the conditions and circumstances of the parties at the time they were written show unmistakably that they relate to the same matter and constitute the several parts of one connected transaction, so that there can be no other reasonable conclusion, from the evidence thus afforded, than that they were written with reference to those concurrent or preceding, there is such a reference of one to the other as satisfies the rule, although there is no reference in express terms; and parol evidence is admissible to show the circumstances under which the transaction occurred, and to connect the several papers constituting the contract between the parties. Strouse v. Elting, 110 Ala. 132, 20 So. 123. See also Jenkins v. Harrison, 66 Ala. 345; White v. Breen, 106 Ala. 159, 32 L.R.A. 127, 19 So. 59,' 2 Ann.Cas. 294.

" 'The rule is one founded in reason; and when, as practical men, we look at the writings and see, inhering in them, evidence which entirely satisfies the mind that they all relate to one general transaction, there is no reason why they should not be so considered. There is in such cases a direct reference of the one to the

other within the meaning of the law.' White v. Breen, 106 Ala. 159, 32 L.R.A. 127, 19 So. 59.'' p. 358

In the case of Brister v. Brubaker's Estate, 47 Tenn. App. 150, 336 S.W.2d 326 (1960) this Court reversed a lower court decree and held that a check for a deposit on a real estate sale, reciting the description of the property and terms of sale, when cashed by the land-owner, was a sufficient memorandum to support specific performance of the sale agreement.

In the case of Yates v. Skaggs, 187 Tenn. 149, 213 S.W.2d 41 (1947) our Supreme Court reiterated the rule that the Statute of Frauds is satisfied by a group of writings as well as by a single writing, and that all of the writings need not be signed if there is sufficient reference therein to establish the necessary connection.

See also Schultz v. Anderson, 177 Tenn. 533, 151 S.W. 2d 1068 (1940), and Boyd v. Maroney, 20 Tenn.App. 117, 95 S.W.2d 1272 (1935).

This Court is satisfied, as was the chancellor, that the collateral, contemporaneous writings executed by, or on behalf of the defendant were, in the absence of any explanatory evidence, sufficient to supply the signature of the defendant which was never affixed to exhibit 13. This record contains no testimony by any employee of defendant to refute the obvious implications of the paper writings heretofore described.

█ The letter of Mr. Skinner, quoted above, is a written memorandum asserting that the unsigned lease attached thereto correctly expresses a previous oral agreement. This, alone, supports the chancellor's finding. The acceptance and endorsement by the corporation of remittances computed at the exact per square foot rate re-

quired by the lease and the endorsement of a subsequent check in the exact amount of monthly rental provided by the lease are sufficient written memoranda to complete an agreement which complies with the Statute of Frauds.

To illustrate, complainant could have signed only one copy of the lease and sent it to defendant with a letter requesting that defendant note its approval and acceptance at the bottom of the letter and return for his files. Such memorandum of approval would certainly be as effective as a signature on the lease. Effectively, this is what complainant did when he sent his checks to defendant pursuant to the lease. The endorsement of defendant upon the checks, unexplained by evidence, is as effective an approval of the lease as a signature thereon.

Cases cited in defendant's brief have been reviewed and found not to be in conflict with the foregoing.

Defendant relies upon the provision in exhibit 13 that it should not be effective until accepted and executed by an authorized officer of the Lessor at its principal office in New York, N.Y. The requirement for execution by an authorized officer is satisfied by the foregoing. The location or scene of approval is immaterial.

Defendant's first assignment of error is respectfully overruled.

Defendant's second assignment of error makes three separate complaints, which must be considered separately.

"1. Appellee was judicially estopped from asserting evidence contrary to the confessed judgment in which appellee stated that he had no defenses."

■ What has been said heretofore in reference to the plea of res judicata is equally applicable to judicial es-

toppel. In addition, the circuit judgment referred to states:

"that defendant, W. N. Batey, *has no defenses to this action* * * *."

The decree entered in this cause two days later states:

"* * * the statement of complainant's solicitor that complainant had no defense to an action at law * * * because his defenses thereto could not be ascerted in the said action at law * * *."

While, as previously suggested, it is not deemed necessary to attempt to determine the motives which actuated the parties under the circumstances, this Court is satisfied, as was the chancellor, that the merits of this controversy ought to be examined once.

The first insistence of defendant's second assignment of error is respectfully rejected.

■ Defendant's second insistence is that agency of the representatives of defendant was not proven. Defendant correctly states the rule that the person seeking to charge an alleged principal with the acts of an alleged agent has the burden of proving agency.

■ Agency may be proved by circumstances and by evidence of the conduct of the parties. Rich Printing Co. v. McKellar's Estate, 46 Tenn.App. 444, 330 S.W.2d 361, 959 (1959).

■ All corporate organizations act by and through boards, commissions, officers and employees, and if they act within the apparent scope of their authority, their actions are those of the corporation. Whitehaven Utility Dist. of Shelby County v. Ramsey, 215 Tenn. 435, 387 S.W.2d 351 (1964).

■ In the present case, complainant dealt with three apparent agents of defendant corporation, each of whom had apparent authority in the form of printed forms, access to property and files of the corporation and identification with others acting for the corporation. It is not shown who affixed the endorsement of the corporation upon the rental checks, but it must be presumed in the absence of contrary evidence that such checks were handled and endorsed by duly authorized representatives of the corporation.

In spite of the protestations in its pleadings and brief that no authorized agent has bound it to a contract, the corporation offers not a word of testimony to refute the inferences of agency arising from circumstances and conduct. This Court is satisfied, as was the chancellor, that the corporation was bound by the acts of its employees who had apparent authority to act for the corporation.

Defendant's third insistence under its second assignment of error is that:

"3. Appellee, by his own sworn statement, impeached himself and is not worthy of belief."

■ Defendant cites certain alleged inconsistencies in the testimony of complainant in regard to the continuation or interruption of negotiations between the parties from July 1965 to the date of Exhibit 13 (July 1966). Such testimony has been examined and it reveals no glaring misstatements of material facts. If it bears any relationship to the issues at all, the relationship is remote; and the inconsistencies are readily understandable from the unfortunate atmosphere during the taking of the testimony, which situation is clearly evident from the written record before this Court. This Court finds nothing

in the record to justify the rejection of complainant's testimony in toto, much less a ground to require such action from an appellate court.

Defendant's second assignment of error is respectfully overruled.

Defendant's third assignment of error is as follows:

"Regardless of whether the Court sustains the position of Appellant as to res judicata, the Statute of Frauds or admissibility of evidence, the preponderance of the evidence clearly shows there was no binding agreement between the parties."

In view of the previous recitation of salient portions of complainant's evidence, the previous rulings upon other assignments of error, and especially the absence of testimony by any officer or employee of defendant, this assignment requires no further discussion. This court agrees with the chancellor that the preponderance of the evidence supports his finding that defendant is bound by the terms of the lease designated exhibit 13.

Defendant's third and last assignment of error is respectfully overruled.

Defendant has filed a supplemental assignment of error asserting that the chancellor should have sustained the demurrer on grounds of Statute of Frauds, and relying upon the original Assignment of Error, Brief and Argument to support the same. The supplemental assignment of error presents the same questions as subsection 2 of the first assignment of error, which have been heretofore discussed and resolved adversely to the defendant.

Defendant's supplemental assignment of error is respectfully overruled.

Complainant has filed two assignments of error, the first of which is:

"(1) It was error to hold that complainant did not have a legal option on 40,000 sq. ft. additional warehouse space of defendant".

Complainant insists that he refused at first to sign the lease (exhibit 13) but was induced to do so by a conversation with James B. Gilmore on August 3, 1966, as confirmed by exhibits 11 and 12. Exhibit 11 is a letter from complainant to Jim Gilmore, vice president of defendant, dated August 3, and contains a number of changes to be made in the lease including:

"It was agreed * * * that you will give us the right of first refusal of 40,000 sq. ft. of space in your warehouse #2 now under construction."

Exhibit 12 is a letter from Mr. Gilmore to complainant dated August 5, 1966 and containing the following:

"Pursuant to our conversation August 3, we do hereby extend to Batey Moving and Storage the right of first refusal on 40,000 square feet located in Building #2 on Allied Drive.

"The lease rate for 40,000 square feet for three years is $.65 per square foot gross. This figure is based on projected taxes and is subject to revision as taxes are revised."

On the same date, August 5, 1966, Mr. Tom Skinner, Southeast Region Administrator of defendant, wrote to complainant, sending him the corrected lease (exhibit 13) with the comments previously quoted.

Following receipt of the two letters dated August 5, complainant signed and returned the lease to Mr. Gilmore

on August 26. Although the option, or "right of refusal" on 40,000 square feet was not mentioned in the lease, complainant insists that it represents a separate agreement given to him as inducement to sign the lease and that his signing of the lease was the consideration for this separate agreement.

It is unnecessary to discuss or determine whether complainant had an enforceable option to lease additional 40,000 square feet, because even if he did, this record would not support a decree for specific performance or damages. Complainant's evidence shows that the space in question has already been leased to others. It would be inequitable and unjust to force the defendant to evict innocent third parties in order to make the space available to complainant. There is no evidence in the record upon which the chancellor or this Court might reasonably estimate or ascertain just damages. Complainant testified that he "talked to some people and had occasion to need some space". He gave no details of the income which he could have derived from the space, cost of equivalent space or resultant loss.

Complainant's first assignment of error is respectfully overruled.

Complainant's second assignment of error is as follows:

"(2) It was error to fail to award damages to complainant."

Complainant supports this assignment with three insistencies, the first two of which are:

"(1) Defendant agreed to build complainant an office (Deposition page 67), and for a rental of $42.00 per

month which later defendant refused to do and your complainant was required to enter into a lease agreement for office space at a rental of $150.00 per month (Complainant's deposition page 67, Line 11—Page 69, Line 19) over the minimum lease period of 5 years or for a total loss to complainant at the rate of $1,296.00 per year.

"(2) Defendant agreed to pay $1,000.00 towards the erection of a barrier (deposition of complainant, page 71, Line 7-9) and same was never paid."

The testimony referred to begins as follows:

"Q. Now, Mr. Batey, in your negotiations with D. H. Overmyer and Company it was agreed they would build you office space?

Mr. Maddin: Objection, leading and calls for a legal conclusion.

Sustained: Alfred T. Adams, Chancellor.

Q. You may answer the question.

A. Yes Sir, etc. * * *."

 The foregoing objection was recorded as a part of the proceedings at the taking of the deposition. The chancellor's ruling thereon is noted in long-hand, evidently at a later time. The objection was timely, as required by Sec. 24-1211 T.C.A., and counsel was thereby given opportunity to reword his question, which was objectionable as leading. Patterson v. Kroger Co., 54 Tenn. App. 243, 389 S.W.2d 283 (1964). Counsel did not see fit to reword his question, and has assigned no error as to the ruling made by the chancellor when the deposition, with its recorded objections, were presented to him.

The ruling of the chancellor, which was correct, sustained the objection to the form of the question and thereby excluded from his consideration, and the consideration of this Court, the answer which was made to the objectionable question.

 Counsel may be under a duty to move to strike an answer to an improper question given during an oral trial, especially before a jury. Where, however, in the taking of depositions prior to trial, valid objections are made for future ruling and the answer of the witness is recorded, the subsequent exclusion of the question also excludes the answer.

Exhibit 13, the lease signed by complainant and sustained by the chancellor, contains no reference to construction of any improvements on the premises. There is nothing in the record to indicate that defendant made any agreement regarding such improvements contemporaneous with and as an inducement to the execution of exhibit 13 by complainant. The only conclusion sustainable by this record is that improvements to the premises were inadvertently overlooked or deliberately omitted in composing the final agreement (Exhibit 13), which superseded all previous negotiations.

The first two insistencies of complainant's assignment No. 2 are respectfully rejected.

The third insistence under the second assignment of error is:

"(3) Complainant suffered anticipated loss of profit in the amount of $16,250.00 (Complainant's deposition page 75, line 11-19)."

Complainant's anticipated losses were in contemplation of his eviction, which will not occur under the holding of the chancellor, as affirmed herein.

Complainant's second assignment of error is respectfully overruled.

Every assignment of error of both complainant and defendant has been considered and overruled. The decree of the chancellor is affirmed. The costs of this appeal are adjudged against the defendant, D. H. Overmyer Warehouse Company. The cause is remanded for further orders and proceedings to implement the chancellor's decree.

Affirmed and remanded.

Shriver, P. J. (M.S.), and Puryear, J., concur.