Mr. and Mrs. Ralph D. SONDGEROTH, Plaintiffs-Appellees,

v.

Mrs. Roy A. CARRINGTON, and K.C. Realty Company, Defendants-Appellants,

v.

Ralph D. SONDGEROTH, and Mrs. Ralph D. Sondgeroth, aka Jeanenne M. Sondgeroth, Counter-Defendants-Appellees, and

Harry F. Dokulil and wife, Harriet J. Dokulil, Third-Party Defendants-Appellees.

Court of Appeals of Tennessee, Western Section.

Nov. 22, 1982.

Rehearing Denied Dec. 13, 1982.

Permission to Appeal Denied by Supreme Court May 31, 1983.

James W. Watson, firm of Watson & Arnoult, Memphis, for defendant-appellant Mr. Roy A. Carrington.

Robert C. Wilder, firm of Carney & Wilder, Ripley, for defendant-appellant K.C. Realty Co.

C. Craig Fitzhugh, firm of Caldwell & Fitzhugh, Ripley, for plaintiffs-appellees, Mr. and Mrs. Ralph D. Sondgeroth.

TOMLIN, Judge.

This appeal comes to this Court from the Circuit Court of Lauderdale County, whereby the defendants seek relief from an ad-

verse judgment of the Circuit Court, which tried the case without a jury.

The plaintiffs, claiming material misrepresentation of fact, filed suit against the defendant Carrington and her real estate agent, seeking the rescission of a deed to a parcel of real estate, and a cancellation of a real estate contract entered into between the parents of one of the plaintiffs and the defendant Carrington [claiming a material misrepresentation of fact]. The defendant Carrington counterclaimed against the plaintiffs and filed a third-party complaint against the plaintiffs' parents, the signers of the contract, seeking to have an equitable lien impressed upon the property that was the subject of the contract. The trial court granted the relief sought by the original plaintiffs and denied the relief sought by the defendant Carrington in her countersuit.

Three issues are presented by this appeal: (1) Did the trial court err in finding the parents of one of the plaintiffs to be the plaintiffs' agent in the signing of the real estate contract so as to enable the plaintiffs to cancel the contract? (2) Were any material representations made to the original contracting parties that would uphold an action for cancellation of a contract to purchase real estate? (3) Did the trial court err in not declaring an equitable lien on the real estate described in the original contract and in failing to order said property sold so as to apply the proceeds of sale to the payment of the balance due on the purchase price? In resolving these issues, we reverse in part and modify the judgment of the trial court.

In the complaint, plaintiffs Mr. and Mrs. Ralph Sondgeroth allege that Mr. and Mrs. Harry Dokulil came to Ripley, Tennessee for the purpose of purchasing a home for them and the Dokulils. They alleged that they were shown several pieces of property by a broker affiliated with the defendant K.C. Realty Company, one of which was a house and acreage owned by the defendant Carrington; that the Dokulils entered into a written contract with defendant Carrington to purchase her property, with the contract providing for the right of assignment to plaintiffs; that as part of the same transaction defendant Carrington sold to plaintiffs for cash a small tract of land adjacent to the parcel that was the subject of the contract.

Plaintiffs further alleged that an employee of the defendant realty company, acting as the agent for the defendant Carrington, made a misrepresentation to the plaintiffs as to the school district in which the subject property was located, and that said misrepresentation was both erroneous and material to the contract; that upon learning the true facts, they sought to rescind the entire transaction, but to no avail; hence, the filing of this suit. Plaintiffs sought cancellation of the contract, rescission of the deed to the property purchased outside the contract, and the return of a portion of the purchase price alleged to have been paid to the defendant Carrington by the plaintiffs.

The defendant K.C. Realty Company denied that any of its employees made any misrepresentations of any type to plaintiffs or the contracting parties. The defendant Carrington, in her answer, made the same denials. In addition, the defendant Carrington filed a counterclaim against the plaintiffs and a third-party action against the Dokulils, asserting the contract between her and third-party defendants, acknowledging that pursuant to contract, the third-party defendants paid Carrington earnest money in the sum of $1,000 and an additional sum of $7,500 as part of the down payment on November 20, 1980. She further alleged that the original contract was amended to provide that Mrs. Dokulil would have until March 20, 1981, to pay the remainder of the $20,000 down payment on the purchase price, and that she, Mrs. Dokulil, would take charge of the property and be responsible for utilities as of December 8, 1980, and that she had done so. The counter-complaint further alleged that on March 20, 1981, defendant Carrington and

Mrs. Dokulil acknowledged the payment of the balance of the purchase price by Mrs. Dokulil; Mrs. Dokulil's agreement to purchase an adjacent tract of land; and that Mrs. Dokulil requested defendant to make separate deeds to the two tracts to the plaintiffs, with it being understood that the plaintiffs would execute a note to Carrington in the amount of $40,000, bearing interest at the rate of 10 per cent per annum, payable over a period of 10 years, secured by a deed of trust on the parcel containing the residence.

Carrington further alleged that having been paid the purchase price, she executed and delivered a warranty deed to the acreage adjoining the original tract to the plaintiffs, which deed was recorded; that plaintiffs insured the premises that were the subject of the original contract, naming Carrington as loss payee; and that she executed a warranty deed to the subject property to the plaintiffs for delivery to plaintiffs upon the execution and delivery to Carrington of the promissory note and trust deed, pursuant to the contract, but that plaintiffs had failed to perform their part of the contract. Carrington sought to have an equitable lien declared upon the property, asking that the property be sold in satisfaction of the lien to satisfy the balance due on the property under the contract.

This case was tried below by the trial judge sitting without a jury; we now consider the issues raised upon the record *de novo* with a presumption of correctness afforded the trial court, unless we find that the evidence preponderates against the rulings of the trial court. Rule 13(d) T.R.A.P. In order not to add unduly to the length of this opinion, we will consider the facts as they relate to each of the issues.

### I. THE QUESTION OF AGENCY.

■ The trial court found that the Dokulils were the agents of the plaintiffs, thus enabling the plaintiffs to bring this action. We agree that the evidence in this case supports the trial judge's finding. Both Mr.

and Mrs. Dokulil testified that when they came to Ripley, Tennessee for the first time in October, 1980, and signed the contract to purchase defendant Carrington's property, their intention to purchase the property for the plaintiffs was made known to plaintiffs' counsel, notwithstanding the fact that Mrs. Dokulil testified, as did plaintiffs' counsel, that if the plaintiffs did not like the property, then they, the Dokulils, would purchase it anyway. At the instance of the Dokulils, a provision was placed in the original contract of sale to the effect that the Dokulils would be granted the privilege of assigning their rights under the purchase contract to the plaintiffs. While not material to this issue of agency, it should be noted that no such assignment was ever executed by the Dokulils or the plaintiffs. Furthermore, in an unchallenged supplement to the original contract, it was agreed between Mrs. Dokulil and the defendant Carrington that title to the property covered by the contract would be conveyed by the defendant Carrington to the plaintiffs upon the delivery to her of a promissory note in the amount of $40,000, executed by the plaintiffs, secured by a deed of trust upon the property.

■ In furtherance of this contract, the defendant Carrington caused her attorney to prepare the deed conveying title to the property to the plaintiffs. He also prepared the promissory note and deed of trust for and delivered them to plaintiffs' attorney. Without any question, agency may be proven by circumstances and by evidence of conduct of the parties. *Batey v. D.H. Overmeyer Warehouse Co.*, 60 Tenn.App. 310, 446 S.W.2d 686 (Tenn.App.M.S.1969), *cert. denied, id.* (Tenn.1969).

### II. REPRESENTATIONS CONCERNING SCHOOL DISTRICTS.

■ The trial court found that "Mrs. Scott as agent of K C and Mrs. Carrington, either pointed out the schools as being the schools that the children would attend or should have told them about this as the

problem was created in that district by the busing agreement .... " An analysis of the nature of the trial court's finding shows that the defendants either made a misrepresentation or breached a duty to the plaintiffs by not making a proper representation. We do not agree with the trial court, and we are of the opinion that the proof preponderates against the finding of either a breach of duty or of an actual misrepresentation made by defendant or her agent regarding the school districts. The proof is undisputed that defendant Carrington's property is located in the Henning-Arp School District, not the Ripley School District. It is also undisputed that Mrs. Scott, an employee of defendant K.C. Realty, was defendant Carrington's agent. We further find no contradiction in the proof that the defendant herself is not charged with an actual misrepresentation, but is held accountable only as a principal.

From reading the record, there is much evidence that at the time the Dokulils signed the contract, there was no mention of school districts or the materiality of school districts. From reading all the proof, though there is some dispute on this point, we think the record supports the conclusion that the mention of K.C. Realty's employee of the Ripley school was done on a day prior to showing defendant Carrington's property to the Dokulils, and was unrelated to the defendant Carrington's property.

The discrepancy in the testimony of the plaintiffs themselves indicates to this Court that for some reason the plaintiffs wish to get out of this contract, but not for the reasons advocated by them. Mrs. Sondgeroth testified that the location of the defendant's property in the Henning-Arp School District was material because of the discrepancy in the quality of education obtainable there as opposed to the Ripley School District. Mr. Sondgeroth testified, on the other hand, that he had been advised that the quality of education obtainable in the two districts was equal, and stated that the

issue was purely geographic; that the school or schools in the Henning-Arp School District required much more travel than would be required if their children were to attend school in the Ripley district. There was no testimony whatsoever of any disparity or discrepancy in the quality of education in the two school districts. The superintendent of the county school system testified that the quality of education was the same at both schools, and that one of the schools in the Henning-Arp School District was in fact closer to the defendant's property than the Ripley school, while the other school in the Henning-Arp School District was more distant than the Ripley school.

The record reveals that the Dokulils took over the responsibility of defendant's property in December, 1980, assuming all responsibility for paying the utilities. They moved into the premises in January, 1981. In May, 1981, plaintiffs caused the residence to be insured in their names, showing the defendant Carrington as a loss payee.

In addition, the record shows that plaintiffs took title to the two-acre lot adjacent to the residence of defendant as of March 20, 1981. On that same date defendant Carrington executed a deed to the homeplace to be held by her attorney, pending delivery of the note and trust deed to be signed by the plaintiffs. The plaintiffs executed the note and trust deed in favor of Mrs. Carrington, the trust deed bearing an acknowledgment dated March 30, 1981 (by a notary public in Roseau County, Minnesota).

What happened to the note and trust deed after that is unclear. It is clear that it was almost 90 days later that plaintiffs caused their attorney to write to defendant Carrington, advising her that they desired to rescind the entire transaction. Mrs. Sondgeroth testified that while she and her husband moved to Ripley in May, 1981, she first learned of the actual school district in which the property was located just a few days before the letter seeking rescission was written by her attorney on June 29,

1981. Obviously, in April, May and early June, plaintiffs developed reservations about consummating the transaction, and the school district location appeared to provide the perfect out. The judgment of the trial court voiding the deed and cancelling the contract is accordingly reversed.

## III. DEFENDANT'S CLAIM FOR AN EQUITABLE LIEN.

In her counterclaim, defendant Carrington sought to have the trial court declare an equitable lien upon the property and to order it sold pursuant to said lien, applying such portion of the proceeds as necessary to the balance of $40,000 due her under the original contract of sale.

■ She cites as authority for this requested action the case of *Milam v. Milam*, 138 Tenn. 686, 200 S.W. 826 (Tenn.1917), and *Southern Ice & Coal Co. v. Alley*, 127 Tenn. 173, 154 S.W. 536 (Tenn.1912). While we do not quarrel with the principles of law laid down in both cases, they are not applicable to the case at bar. In both the *Milam* and *Southern Ice & Coal Co.* cases, the defendants from whom relief was sought, or their successors in interest, had title to the real property against which an equitable lien was claimed. We think this is a prerequisite to the application of this doctrine. In the case at bar, counter-defendants did not have legal title to the property sought to be subjected to the lien. Although they were in possession under the contract between the defendant Carrington and the Dokulils, we do not deem this to be sufficient.

■ The legal position taken by the plaintiffs in seeking to cancel or rescind the contract of sale and in failing to carry it out, insofar as the defendant Carrington is concerned, constituted a breach of the contract. *See generally* 17 Am.Jur.2d *Contracts* § 443 (1964). The defendant Carrington is entitled to damages on account of this breach. There being no proof of damages in the record, we accordingly remand this case to the trial court for the purposes of taking additional proof and determining what damages should be awarded the defendant on her counterclaim and third-party claim.

■ By supplement to the original contract, Mrs. Dokulil, whom we have held to be the agent of the plaintiffs, agreed to take complete charge of the property. Apparently either the plaintiffs, or the Dokulils, or both, were still in possession of the property at the time of the trial below, in October, 1981, as the trial court ordered the plaintiffs to pay the defendant Carrington rent in the sum of $600 per month, beginning December 8, 1980, through the month of October, 1981. However, in light of the fact that she surrendered possession of the premises to the plaintiffs and/or their agents in December, 1980, we feel that she is entitled to compensation for this in the form of rent, in addition to the damages to be awarded on remand. Accordingly, we not only affirm the judgment of the trial court as pertains to the rental to be paid by the plaintiffs to the defendant Carrington, but we expand it to cover each and every month that the premises were occupied by the plaintiffs from and after October, 1981.

In view of the fact that this Court has reversed the trial court as to the rescission of the real estate contract, the judgment of the trial court ordering the defendant K.C. Realty Company to refund the real estate commission paid to it by the defendant Carrington is reversed. The trial court is directed to reconsider this issue on remand in connection with the consideration of damages to be awarded the defendant Carrington.

This cause is remanded to the Circuit Court of Lauderdale County for further proceedings consistent with this opinion. Costs are taxed to the plaintiffs, for which execution may issue, if necessary.

BROOKS McLEMORE, Special Judge, concurs.

NEARN, J., not participating.