Dorothy MAYS, Plaintiff–Appellant,

v.

BRIGHTON BANK, Defendant–Appellee.

Court of Appeals of Tennessee, Western Section, at Jackson.

Feb. 4, 1992.

Permission to Appeal Denied by Supreme Court April 27, 1992.

J. Thomas Caldwell, Ripley, for plaintiff-appellant.

J. Houston Gordon, Covington, for defendant-appellee.

CRAWFORD, Judge.

This case involves a security interest in a chattel under the Uniform Commercial Code. From the adverse judgment of the trial court in a detainer action, plaintiff Dorothy Mays appeals.

In 1989, Randy Mays and Dorothy Mays were husband and wife. Mr. Mays owned and operated a small business, known as Knotts Food Distributor, and Mrs. Mays was employed in a paint shop. The couple maintained a single checking account at defendant Brighton Bank (hereinafter Bank), which was listed in the names, "Knotts Food Distributor, Randy or Dorothy Mays."

Mrs. Mays wanted a stock trailer with a tack room and dressing area in front, to use in transporting her horses, and Mr. Mays agreed to give her such a trailer as a gift. She shopped in Tennessee but was unable to find a trailer that suited her needs. She then reached an agreement with an Arkansas firm, Big Valley Trailer (hereinafter Big Valley), whereby the firm agreed to build her a trailer which she could then have customized. The purchase price for the trailer was $3,150.00.

James Tinkler, who was president of Bank at all times pertinent to this case, testified that Mr. and Mrs. Mays met with him to discuss obtaining a loan with which to purchase the trailer. Mr. Tinkler approved a loan to Mr. Mays for $5,500.00, and, on August 29, 1989, Mr. Mays signed a combination promissory note-security agreement, granting Bank a security interest in the trailer to be purchased. The trailer is described in this document: "18 Ft. Big Valley Gooseneck Trailer SN# 16094". Mr. Tinkler testified that the serial number was supplied to him by "the Mays". Mrs. Mays did not sign the agree-

ment, and she denied that she met with Tinkler to discuss obtaining a loan to purchase a trailer.

Bank deposited the loan money into the Mays' joint account. On September 11, 1989, Mrs. Mays went to Bank and wrote a check for $502.50 on the couple's account, made payable to the order of Bank. In return, she received an "official check" from Bank for $500.00, made payable to the order of "Big Valley Trailer". Mrs. Mays used this check as a down payment for the trailer. On September 22, 1989, Mrs. Mays following a similar procedure, obtained a check with which she made the final payment. When Mrs. Mays made the final payment, she received a "certificate of origin" from Big Valley, assigning ownership of the trailer to her. No liens were recorded on this certificate.

In March, 1990, Dorothy and Randy Mays were divorced. The divorce decree did not specifically address the question of which spouse was to receive the trailer, but, when Bank repossessed it a few days after the divorce decree was issued, the trailer was on the property of Mrs. Mays' employer (now husband), Richard Griffin.

The parties agree there is only one issue for review in this case: whether Bank had a valid security interest in the trailer.

The trial court found, and Bank maintains on appeal, that Bank had a purchase money security interest in the trailer. As applicable to this case, a "purchase money security interest" is defined in T.C.A. § 47–9–107(b) (1991 Supp.) as a security interest "taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used." To be enforceable, such a security interest must also meet the requirements of T.C.A. § 47–9–203 (1991 Supp.), which provides in pertinent part as follows:

*Attachment and enforcement of security interest—Proceeds—Formal requisites.*—(1) Subject to the provisions of § 47–4–208 on the security interest of a collecting bank, § 47–8–321 on security interests in securities and § 47–9–113 on

a security interest arising under the chapter on sales, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(a) the collateral is in the possession of the secured party pursuant to agreement, *or the debtor has signed a security agreement which contains a description of the collateral* and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

(b) *the value has been given; and*

(c) *the debtor has rights in the collateral.*

(2) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching. (Emphasis added.)

"Debtor" is defined in T.C.A. § 47–9–105(1)(d) (1991 Supp.) as the "person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral...."

■ In this case, there is no question that only Randy Mays is the debtor: he is the only person who "owes payment" to Bank and he is the only person who "signed a security agreement which contains a description of the collateral". Similarly, there is no dispute as to whether Bank gave value, when it loaned Mr. Mays $5,500.00. Plaintiff contends that Bank has no security interest in the collateral, and her position rest on two points: (1) that Bank failed to prove that the money it loaned Mr. Mays was in fact used to purchase the trailer, as required by T.C.A. § 47–9–107, and (2) that, even if the money was so used, Bank has not proved that Mr. Mays ever had rights in the collateral, as required by T.C.A. § 47–9–203(1)(c).

Whether the "value" extended to Mr. Mays in the form of a loan was used to purchase the trailer is a question of fact.

The trial court found that the value extended to Mr. Mays was so used.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

Bank made a loan to Mr. Mays on or about August 29, 1989, and Bank deposited the loan funds in the Mays' joint account on, or shortly after, this date. Within the next three weeks following these events, Mrs. Mays withdrew funds from this joint account to secure two "official checks" with which she purchased the trailer for which the loan was made. In view of these facts we cannot say that the evidence preponderates against the trial court's findings.

The more difficult question is whether Mr. Mays ever had any rights in the collateral as required by T.C.A. § 47–9–203(1)(a).

Plaintiff contends either (1) that Mr. Mays never had any interest in the trailer, because Mrs. Mays took title directly from the manufacturer; or (2) Mr. Mays and Mrs. Mays shared an interest in the trailer as tenants by the entirety—in which case Bank's attempt to obtain a security interest was ineffectual, because property subject to a tenancy by the entirety cannot be encumbered by one tenant acting alone.

■ Mr. and Mrs. Mays maintained a joint checking account with Bank. Under Tennessee law, such accounts between spouses are all but presumed to be tenancy by entirety accounts in the absence of proof to the contrary, see *Griffin v. Prince,* 632 S.W.2d 532 (Tenn.1982), and there is nothing in the record which would lead this Court to reach a different conclusion in this case. A result of having such an account is that any and all funds deposited in it are owned by each party completely, as if each party were the sole account holder. *Sloan v. Jones,* 192 Tenn. 400, 241 S.W.2d 506 (1951). This degree of ownership is found without regard to the source of the funds. *First Am. Nat. Bank v.*

*Evans,* 220 Tenn. 393, 417 S.W.2d 778 (1967). Thus, when Bank deposited the loan fund into the Mays' joint account, both Mr. and Mrs. Mays each fully owned those funds. The question then becomes: What was the status of any property purchased with those funds? There can be no doubt that, in Tennessee, any property—real or personal—can be held by both spouses as tenants by the entirety. *Griffin v. Prince,* 632 S.W.2d 532 (Tenn.1982). It does not follow from that fact, however, that whatever one entirety tenant purchases with the funds from a tenancy by the entirety bank account automatically becomes tenancy by the entirety property. The legal status of property purchased with such funds must necessarily be controlled by the legal status of funds withdrawn from the account by one of the owners.

■ Neither party has presented, nor has our research revealed, a Tennessee case where the court has addressed the exact question presented. Of the courts where the question has been addressed, there is split of authority. Some courts have held that where one joint tenant withdraws funds from a tenancy by the entirety account, or simply removes the other party's name from the joint account, the other party's interest in the affected funds ends. *McEntire v. Estate of McEntire,* 267 Ark. 169, 590 S.W.2d 241 (1979); *Bealert v. Mitchell,* 585 S.W.2d 417 (Ky.App.1979). On the other hand, it has been held that funds removed from such accounts continue to be tenancy by the entirety property. *Matter of Morrow's Estate,* 91 N.M. 81, 570 P.2d 912 (1977); *Madden v. Gosztonyi Savings & Trust Co.,* 331 Pa. 476, 200 A. 624 (1938).

We believe the position which has been adopted by the Arkansas courts is the better view:

An estate by the entireties in a bank account differs in one significant aspect from such an estate in real property in that the estate exists in the account only until one of the tenants withdraws such funds or dies leaving a balance in the account. Funds withdrawn or otherwise

diverted from the account by one of the tenants and reduced to that tenant's separate possession ceases to be a part of the estate by the entireties. (citations omitted). This does not mean that in a proper case under timely allegations of fraud or other such remedy, that one of the cotenants could not sustain an action to recover all or a part of the funds diverted or withdrawn by the other.

*McEntire v. Estate of McEntire*, 267 Ark. 169, 590 S.W.2d 241, 244–245 (1979).

By the standard just stated, funds withdrawn by Mrs. Mays from the couple's joint account, to pay for the trailer, ceased to be tenancy by the entirety property upon withdrawal; nor does anything in the record support the contention that, when she paid for the trailer and placed the certificate of origin in her own name, she intended for the trailer to become tenancy by the entirety property. In fact, just the opposite seems to be true.

Analyzing the circumstances up to this point, it could be argued that Mr. Mays had no interest in the trailer because (1) Mrs. May purchased the item with funds only she owned and (2) she placed title to the property in her name only. There is one flaw with this analysis, however; it overlooks a basic fact admitted as true by both parties: Mr. Mays intended to give Mrs. Mays the trailer, and she accepted it as a gift. It is elementary that, in order for Mr. Mays to have given the trailer to Mrs. Mays, he first must have had an interest in the property. Indeed, this conclusion is implicit in the trial court's finding that Bank had a purchase money security interest in the trailer. We are now brought to a determination of what interest Mr. Mays had in the trailer and how and when such interest was obtained.

■ While the trial court does not explicitly state the factual basis for its purchase money security interest finding, we are convinced from our review of the record that the finding can have only one basis: Mrs. Mays ac ed as Mr. Mays' agent in purchasing the trailer and in having Big Valley place the certificate of origin in her name.

Unless prevented by public policy, a statute, or a contract requiring personal performance, what a person can lawfully do himself, he can do through an agent. This delegation may be manifested by an express authorization or it may be implied from the circumstances and the conduct of the parties....

Implied authority embraces all the powers which are necessary to carry into effect the granted powers, in order to make effectual the purposes of the agency.

1 *Tennessee Jurisprudence*, Agency, § 6, p. 353–354 (1982); see also *Batey v. D.H. Overmyer Warehouse Co.*, 60 Tenn.App. 310, 446 S.W.2d 686 (1969). Whether one party has served as the agent of another is a question of fact. See C.J.S. *Agency*, §§ 490–491 (1972). While the existence of marital or family ties between the alleged agent and principal, "unaccompanied by any other facts or circumstances, will not justify an inference of agency, ... such relationship is entitled to great weight, when considered with other circumstances, as tending to establish the fact of agency." 2A C.J.S., *Agency*, § 53, p. 629–630 (1972).

■ The record shows that Randy and Dorothy Mays were husband and wife; that Dorothy Mays wished to obtain a horse trailer; that Randy Mays agreed to purchase her a trailer as a gift; that he obtained a loan from Bank for this purpose, and that Mrs. Mays took that money and purchased such a trailer which she then titled in her own name. Mrs. Mays does not contend, and the trial court did not find, that Mr. Mays intended to make Mrs. Mays a present of the funds with which to buy the trailer; the gift was to be the trailer itself. Mr. Tinkler testified that Mrs. Mays was aware that her husband had borrowed money from Bank to purchase the trailer and that he met with her and Mr. Mays to discuss the loan and its purpose. Mrs. Mays stated that she had never met with Mr. Tinkler.

The trial court evidently believed Mr. Tinkler. Where the issues in a case turn upon the truthfulness of witnesses, the trial judge who has the opportunity to ob-

serve the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide that issue. *State ex rel. Balsinger v. Town of Madisonville*, 222 Tenn. 272, 435 S.W.2d 803 (1968). The weight, faith and credit to be given to any witness' testimony lies in the first instance with the trier of fact and the credibility accorded will be given great weight by the appellate court. *Town of Alamo v. Forcum–James Co.*, 205 Tenn. 478, 327 S.W.2d 47 (1959); *Sisk v. Valley Forge Ins. Co.*, 640 S.W.2d 844 (Tenn.App. 1982).

■ From our review of the record, we do not find that the evidence preponderates against the trial court's implicit finding that Mrs. Mays acted as Mr. Mays' agent in making such a purchase.

Because Mrs. Mays was acting as Mr. Mays' agent in this matter, he acquired an interest in the trailer sufficient to support Bank's purchase money security interest in the property before Mrs. Mays had the certificate of origin placed in her name. Thus, when Mrs. Mays had Big Valley issue her the certificate of origin for the trailer in her name, she took the trailer subject to Bank's security interest.

The judgment of the trial court is affirmed, and this case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellant.

TOMLIN, P.J. (W.S.), and FARMER, J., concur.