IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

_____

**CLYDE NORMAN BREWER, JR.,**

    Plaintiff-Appellee,

Vs.                               Shelby Equity No. 104568-1

**CAROL CORDELL COLETTA and
COLETTA & COMPANY, INC.,**

    Defendants-Appellants.
_____

FROM THE CHANCERY COURT OF SHELBY COUNTY
THE HONORABLE NEAL SMALL, CHANCELLOR

Mimi Phillips; Phillips, Howard & Grubb of Memphis
For Plaintiff-Appellee

Carl I. Jacobson; Wyatt, Tarrant & Combs of Memphis
For Defendants-Appellants

*AFFIRMED*

Opinion filed:

                                      **W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**HEWITT P. TOMLIN, JR., SENIOR JUDGE**

      This appeal involves an action for breach of an employment agreement.  Defendants, Carol Cordell Coletta and Coletta & Company, Inc., appeal from the judgment of the chancery court which entered judgment in the amount of $31,800.00 in favor of the plaintiff, Clyde Norman Brewer, Jr.

Brewer and Coletta were married in 1976. In 1985, they started a public relations firm together called Coletta Brewer & Company, Inc. They operated the business together during their marriage, and were equal shareholders. The corporation was a public relations firm that specialized in media relations, special event production, speech writing, and counseling.

In 1993, Coletta and Brewer experienced marital problems and their marriage started to break up. Coletta suggested to Brewer that they write daily letters to each other that explored their feelings and problems and how they were going to approach the problems. In May 1993, Brewer started to write a fictional novel based on his relationship with Coletta. He started writing the book over the course of the initial weeks and months of the parties' marital difficulties. However, their marital problems came to a head in July 1993 when Brewer discovered Coletta and her lover having sex on the bathroom floor of her home. Afterwards, Brewer decided to make his book a non-fiction memoir. Coletta knew he was writing a book about their relationship, and even returned the personal letters that Brewer had written to her to help him prepare the manuscript.

The parties were divorced and entered into a Marital Dissolution Agreement (MDA) dated August 13, 1993. The MDA required Brewer to transfer all of his shares in Coletta Brewer & Company to Coletta. Thereafter, Coletta, now the sole shareholder, changed the name of the corporation to Coletta & Company, Inc. In August of 1993, Brewer entered into a written agreement (Agreement) with Coletta & Company, Inc. (hereinafter Coletta & Company or Company). In the Agreement, Company agreed to employ Brewer as a consultant for 24 months to perform whatever work assignments and consulting services that Company required. In return, Brewer was to be paid $72,000.00, payable in 24 equal monthly installments, but the employment was not to exceed 300 hours per year. Brewer agreed to "carry out his employment with ordinary care and diligence to the best of his abilities." In addition, Brewer agreed to a two-year covenant not to compete.

In early 1994, Brewer finished a draft of the manuscript and titled it *Just Friends*. He showed it to Coletta's daughter and to employees of Coletta & Company. Brewer also gave a copy of *Just Friends* to Michael Lollar, a reporter for *The Commercial Appeal*. On August 19, 1994, Lollar called Coletta for comment on the book. That same day, the chairman of Company's largest client called and expressed concern about the book.

2

On August 22, 1994, Coletta informed Brewer, in writing, that she intended to terminate his services and that she would not pay any further payments under the Agreement. On August 24, 1994, Brewer filed a Complaint for Specific Performance and/or for Breach of Contract against Coletta and Coletta & Company. In the Complaint, Brewer alleges that Company cannot cancel the Agreement at will and is obligated to pay him the full amount in the Agreement. He also alleges that the Agreement was entered into by the parties in return for the transfer of his stock in Coletta Brewer & Company. He claims that the amount of compensation in the Agreement, in addition to the covenant not to compete and the consulting services, was just consideration for his stock in Coletta Brewer & Company. He claims that he could have litigated the divorce but chose the Agreement instead because both parties wanted to avoid litigation.

On October 20, 1994, the defendants filed an answer denying that they are obligated to pay Brewer. They aver that Brewer breached the implied covenant of good faith and fair dealing, and therefore, cannot recover.

On July 27, 1994, the cause was heard by the chancery court, sitting without a jury. The Chancellor found that Coletta knew that Brewer was writing the book and returned material to him to help him in preparation for the book. He also found that there was no proof to indicate that anything in the book was incorrect. The Chancellor held that the Agreement was not breached by Brewer, and therefore, by failing to pay Brewer under the terms of the Agreement, defendants breached the contract. Judgment was entered against both defendants for $31,800.00, representing the balance due under the Agreement less a set-off of $7,200.00.

Defendants have appealed and present this issue for the Court: Did the Chancellor err in holding that defendant, employer, did not have just cause to terminate an employment agreement where plaintiff, employee, breached his duty of good faith, fair dealing and loyalty to his employer by engaging in activity detrimental to defendant's business interests and reputation.[1]

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court.

---

[1]Although the contract was between Company and Brewer, the Chancellor awarded judgment against both defendants. On appeal, defendants do not present an issue pertaining to Ms. Coletta's personal liability, so the issue is waived. Defendants will be treated as joint obligors.

Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

Defendants assert that Brewer breached a duty of good faith by publishing his book. They argue that the publication of the book, which detailed Ms. Coletta's infidelity, was detrimental to her reputation and the business interests of Company.

In Tennessee, every contract contains an implied duty of good faith and fair dealing in its performance and enforcement. *TSC Industries, Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. App. 1987). However, the extent of the duty of good faith depends upon the individual contract in each case, and the court should look to the language of the instrument and to the intention of the parties and then impose a construction that is fair and reasonable. *Id.* There is an implied undertaking in every contract on the part of each party that he will not intentionally or purposely do anything . . . which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. App. 1995) (quoting 17 Am. Jur. 2d *Contracts* § 256 (1964)).

Defendants rely upon this Court's decision in *Curtis v. Reeves*, 736 S.W.2d 108 (Tenn. App. 1987). In *Curtis*, the plaintiff, Dorothy Curtis, sued her employer after she was fired for addressing disparaging remarks to one of her employer's tenants. Curtis was employed by her son-in-law, Harold Reeves, as a custodian in his building. *Id.* at 109. After her daughter's marriage to Reeves went sour, Curtis told a tenant about the marital problems and said that she could not understand how the tenant could stay in the building where the landlord was of such low moral character. *Id.* at 110. The Court quoted with approval 56 C.J.S. *Master and Servant* § 42(a)(1948):

> As a general proposition, any act of the servant which injures or has a tendency to injure his master's business, interests, or reputation will justify the dismissal of the servant. Actual loss is not essential; it is sufficient if, from the circumstances, it appears that the master has been, or is likely to be, damaged by the acts of which complaint is made.

*Curtis*, 736 S.W.2d at 112. The Court held that Curtis's statements were detrimental to Reeves's business interests and violated her duty to advance the interest of the business.

Ms. Coletta claims that the publication of *Just Friends* by Brewer was a similar violation of his duty to advance the business of Coletta & Company, and, therefore, there was no breach

4

of the Agreement when his employment was terminated. Brewer testified that the business of Coletta & Company, a public relations firm, is judged by its reputation, its credibility, its ability to keep a secret of a client, its loyalty, and its good judgment.

We disagree with defendants that *Curtis* is dispositive. In that case, the plaintiff addressed her remarks directly to her employer's tenant. *Curtis*, 736 S.W.2d at 110. In addition, the plaintiff's and the defendant's families were in the midst of a dispute and had recently quarreled publicly. *Id.* The Court held that statements to the tenant, encouraging her to leave the building, were detrimental to the defendant's business interests and reputation.

In the instant case, Brewer's book was not channeled directly to any of Company's clients. Although Brewer and Coletta were in the midst of a divorce and the book may have been authored with some spite, the remarks made in the book were not made with the intention of hurting Coletta & Company. The Chancellor apparently believed Brewer and was not persuaded that he breached a duty of good faith. Moreover, contrary to Ms. Coletta's testimony, there was testimony from one of Company's major clients to the effect that the book had no impact on its relationship with Company. The weight, faith, and credit to be given to any witness's testimony lie in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Mays v. Brighton Bank*, 832 S.W.2d 347, 352 (Tenn. App. 1992); *Town of Alamo v. Forcum-James Co.*, 327 S.W.2d 47, 49 (Tenn. 1959).

Although *Curtis* does not require that the employer show actual damages, the employer must still show that he or she has been, or is likely to be, damaged by the acts of which complaint is made. *Curtis*, 736 S.W.2d at 112. In 1993 and 1994, before publication of the book, the gross receipts of Coletta's business were $400,000.00 and $580,000.00, respectively. Coletta & Company employed between six and eight employees during that period. However, in the first half of 1995, the gross receipts at Coletta & Company dropped to $155,000.00 which project to $310,000.00 for the year. Although Coletta & Company did not make as much money in 1995 as it did in 1994, and its staff was reduced to two employees, there was no proof that this was caused by the publication of *Just Friends*. To the contrary, the proof showed that Coletta & Company lost a number of clients for other business reasons including a move out of Memphis and a decentralization of a marketing division. Furthermore, Ms. Coletta's reputation

did not appear to be tarnished following publication of the book. The proof showed that she was the luncheon speaker for the Memphis Downtown Rotary Club and was featured in their newsletter, that she was in a *Memphis Magazine* article titled "Women You Need to Know," and that her business was discussed in the *Memphis Business Journal.* All of these accolades came after *Just Friends* was published.

We also think it is important that Ms. Coletta supported the writing of the book and never felt anything Brewer could say would embarrass her. Brewer testified that she said that nothing she had ever done was embarrassing and that she wouldn't want to do anything to stop the book. Coletta admitted that after publication of the book she went to a costume party dressed as Hester Prynne, the scorned adulteress in *The Scarlet Letter*.

The evidence does not preponderate against the Chancellor's finding that Company breached Brewer's contract, and that he is entitled to the balance due thereon.

Brewer presents one issue for review: Whether the Chancellor erred in allowing a set-off of $7,200.00. When Company terminated Brewer's contract, it transferred an account to Brewer which he continued servicing, and the client paid him $7,200.00 directly for his services. The evidence does not preponderate against the Chancellor's finding that this amount should be set off against Brewer's recovery.

The judgment of the trial court is affirmed. This case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against appellants.

 

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**DAVID R. FARMER, JUDGE**

_____
**HEWITT P. TOMLIN, JR.**
**SENIOR JUDGE**