IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE
_____

**SHEILA FAYE HAGEN MCCALL BARNETT,**

    Plaintiff-Appellee,

                                   Davidson Circuit No. 95D-859

Vs.                               C.A. No. 01A01-9706-CV-00244

**RONALD EDWARD BARNETT, SR.,**

    Defendant-Appellant.
_____

FROM THE DAVIDSON COUNTY CIRCUIT COURT
THE HONORABLE MURIEL ROBINSON, JUDGE

Jack Norman, Jr. of Nashville
Thomas F. Bloom of Nashville
For Appellee

Clark Lee Shaw of Nashville
Larry Houston Hagar of Nashville
For Appellant

***AFFIRMED AND REMANDED***

Opinion filed:

                                                  **W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

        Plaintiff, Sheila Faye Hagen McCall Barnett (Wife), and defendant, Ronald Edward

Barnett, Sr. (Husband), were divorced by decree entered January 9, 1997. Husband appeals and

presents issues concerning property division, alimony, and attorney's fees.

FACTS

After co-habitating for several years, Husband and Wife married in 1992. Husband and Wife, age 53 and 43 respectively at the time of trial, did not have any children born of the marriage. It was the third marriage for both parties. At the time of the marriage, Husband earned a gross income of approximately $45,000 per year as a franchise salesman for ServPro Corporation ("ServPro"), a carpet cleaning business. This was the only asset of material value that Husband brought into the marriage. In fact, Husband had been discharged under Chapter 7 of the Bankruptcy Code shortly before the marriage. Wife, on the other hand, earned approximately $80,000 per year gross income at the time of the marriage as a manufacturer's representative. Wife also owned certain real estate, bank accounts, and other personal property, all of which had a substantial value.

Shortly before the marriage, Wife contracted to acquire a home on North Wilson Boulevard in Nashville. The closing occurred shortly after the date of the marriage. Wife made a down payment of $28,345 from her own assets and signed a note for $105,800. The title of the real estate listed Wife as sole owner, and Husband was not obligated on the note. Husband contributed one-half of the mortgage payments on the home, and the note was reduced to $89,954 at the time of trial. Husband also contributed to taxes and insurance for the home and to the cost of installing $3,500 worth of improvements to the home.

The parties retained separate bank accounts during the marriage. Each party, however, funneled money into a joint bank account that was used to pay for household expenditures. In 1993 Husband learned of the opportunity to purchase a local ServPro franchise for $90,000. Because Husband lacked the requisite capital to purchase the franchise, the parties agreed that Wife would make a down payment of $25,000 and that both Husband and Wife would sign a promissory note for the remainder of the purchase price. The parties formed a Subchapter S Corporation named West End Management, Inc. ("West End Management") to own the franchise. Wife and Husband were the only members of the Board of Directors; Wife was designated President and Husband designated Secretary/Treasurer. Wife owned seventy-five (75%) percent of the stock and Husband owned the remaining twenty-five (25%) percent. Husband controlled the day-to-day operations of West End Management and received a monthly salary of $2,700 as compensation.

Although West End Management's business began to flourish, the parties' relationship started to deteriorate. In 1994 Husband unilaterally raised his salary to $4000 per month without informing Wife. When Wife discovered this, she called a Board of Director's meeting where Husband was removed from his position of Secretary/Treasurer, and his monthly salary cut back to $2,700. Although both parties filed for divorce in March of 1995, the couple attempted a reconciliation the following summer. During this period, Wife contracted to purchase a condominium in Florida for $335,000. Wife made a down payment of $67,000 from her bank account and signed a note for the remainder of the purchase price. Husband did not contribute to the down payment, did not sign the mortgage note, did not contribute to any mortgage payments, and his name was not listed on the deed.

After the parties' attempt at reconciliation failed, Wife filed an Amended Complaint for divorce in May of 1996. Following a trial, the trial court issued a final decree of divorce on January 9, 1997. The trial court granted the divorce to both parties on stipulated grounds of inappropriate marital conduct by each party pursuant to T.C.A. § 36-4-129 (1996). The trial court found by "[u]ncontradicted proof" that the parties "made a very concerted effort" to keep their estates separate during the marriage. Therefore the trial court classified each of the parties' personal bank accounts and investment accounts as separate property. In addition, the trial court ruled that the North Wilson Boulevard home, with an equity of approximately $82,000, was separate property owned by Wife, but recognized the increase in the value of the equity as marital property. The trial court held that Husband was entitled to $9,572.61 as a division of this marital property, in addition to one-half of the parties' $1000 joint bank account. The trial court did not value the West End Management business and found that the shares owned by each party in the business were separate property. Among the court's other holdings in its final decree, was the refusal to grant alimony and the order that each party pay its own attorney's fees.

After this judgment was entered, Wife terminated Husband from his employment with West End Management. Husband filed a motion to alter or amend the judgment. Husband sought to restrain Wife from firing him or, in the alternative, to be awarded alimony. The trial court denied this motion.

ISSUES

The first issue for review is:

> 1. Whether the preponderance of the evidence supports the Trial Court's division of property between the parties and whether the distribution so ordered is equitable.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13 (d). The valuation of an asset is a question of fact, and on appeal there is a presumption that the trial court's valuation is correct. *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. App. 1987); *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. App. 1973).

When dividing property, the trial court must distinguish separate property from marital property and then "equitably divide" the marital property. T.C.A. § 36-4-121 (a)(1) (1996); *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. App. 1988). Guidelines for such division is set forth in T.C.A. § 36-4-121:

> (b) For purposes of this chapter:
> (1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.
> (B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.
> (C) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.
> (D) Property shall be considered marital property as defined by this subsection for the sole purpose of dividing assets upon divorce and for no other purpose; and
> (2) "Separate property" means:
> (A) All real and personal property owned by a spouse before marriage;
> (B) Property acquired in exchange for property acquired before the marriage;
> (C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1); and
> (D) Property acquired by a spouse at any time by gift, bequest, devise or descent.

T.C.A. § 36-4-121 (b)

Husband contends that the trial court erred by classifying most of the assets as separate property owned by Wife instead of as marital property. Although the parties did not enter into an antenuptial agreement, the record supports the trial court's finding that both parties decided before and during the marriage to maintain separate estates. At trial, Wife testified as follows:

> We discussed his financial situation and my financial situation and we agreed, at that time, that everything I earned would remain in my bank accounts and would be solely mine, my property and that everything that he had would remain in his bank account and be solely his property and that I would have nothing to do with his bank accounts and he would have nothing to do with my bank accounts.

This testimony was not contradicted at trial.[1] Husband testified that he made deposits into Wife's bank account on occasions, to make contributions to "half of the house note, taxes, and insurance on the house." With the exception of these deposits and deposits into the parties' joint bank account, the evidence indicates that the parties deposited their earnings into their own individual accounts.

A somewhat similar situation was presented in *Mose v. Mose*, No. 01A01-9508-CH-00337, 1996 WL 76321 (Tenn. App. Feb. 23, 1996). In *Mose*, the wife deposited her personal earnings into a separate savings account. *Id.* at *1. The husband "always agreed" throughout the marriage that "the income earned by the [w]ife was hers to use as she desired." *Id.* at *2. During the divorce litigation, the husband attempted to list the wife's savings account, valued at $10,000, as a marital asset. *Id.* This Court stated:

> The $10,000 savings account should ordinarily be determined to be marital property since the Wife acquired this money during the marriage by saving her payroll checks while employed outside the home. However, the Husband consented to her treating this account as her own property. This, in effect, was a gift from Husband to Wife. Thus, it was never the intention of either party that this account be jointly held.

*Id.* at *7 (citing T.C.A. § 36-4-121 (b)(2)(D)).

In the case at bar, the uncontroverted evidence at trial indicates that both parties agreed before and during the marriage to segregate their assets. As noted by the trial court, both parties

---

[1] When questioned by Wife's counsel, Husband initially responded that he did not recall discussing such an arrangement with Wife. Wife's counsel, however, referred Husband to his deposition, in which he conceded that they agreed to maintain separate bank accounts.

were savvy business people who had been married twice before. The evidence supports the trial court's finding that the parties' bank accounts, investment accounts, and retirement accounts were all funded by each of the parties' own separate earnings and by their express agreement. Therefore, the parties in effect granted gifts to each other. T.C.A. § 36-4-121 (b)(2)(D); *Mose*, 1996 WL 76321 at *7. Consequently, the trial court did not err in declaring these accounts to be separate property.

The evidence supports the trial court's classification of other property as separate property. The Florida condominium was purchased by Wife with money from her separate account and constitutes property "acquired in exchange for property acquired before marriage." T.C.A. § 36-4-121(b)(2)(B). Husband's name was not listed on the deed or the note and he concedes that he did not make any financial contribution whatsoever to the real estate. Therefore, the trial court properly classified the condominium as Wife's separate property.

The record also supports the trial court's determination that the stock in West End Management was separate property owned by each party. The parties specifically agreed that Wife would own seventy-five (75%) percent of the stock and that Husband would own twenty-five (25%) percent of the stock.[2] On its face, the fact that the shares were divided in such a disproportionate arrangement evidences the parties' intent to consider the shares as separate property. Any contribution made by Husband to the value of Wife's shares was done in the performance of his duties as an officer of the corporation for the benefit of the shareholders and not as a spouse contributing to the increase in value. Thus, we do not consider these efforts on behalf of the corporation as a "substantial contribution" as contemplated by T.C.A. § 36-4-121 (b)(1)(C). Husband further claims that the home on North Wilson Boulevard should have been characterized as marital property. Conceding that the home was initially purchased with Wife's separate funds, Husband maintains that the home was transmuted to marital property. We must disagree. This house, like the Florida condominium, was purchased by Wife solely from her separate funds and constitutes property "acquired in exchange for property acquired before marriage." T.C.A. § 36-4-121 (b)(2)(B). Husband also argues that he "substantially

---

[2] Husband alleges that the parties orally agreed that after the initial $25,000 deposit was paid back to Wife, the parties would co-own the shares 50/50. Wife disputes this contention, and the trial court accredited Wife's testimony. *Mays v. Brighton Bank*, 832 S.W.2d 347, 351 (Tenn. App. 1992).

contributed" to the home's appreciation in value due to such actions as assisting in locating the home, contributing to mortgage payments, insurance and taxes, and contributing to the home's improvements, maintenance, upkeep, and preservation. Although the trial court credited Husband for his contributions to mortgage payments and improvements in the amount of $9,572.61, Husband contends that he should have a larger share in the home's appreciation in value.

The trial court, in fact, found that Husband had made a contribution to the increase in equity of the home. Therefore, the trial court aptly classified this increase in equity as marital property. *See Cohen v. Cohen*, 937 S.W.2d 823 (Tenn. 1996). The trial court proceeded to divide this marital property in accordance with the guidelines set forth in T.C.A. § 36-4-121 (c), allocating $9,572.61 to Husband as "an equitable division of the marital property." Trial courts are afforded "wide discretion in dividing the interests of the parties in jointly owned property." *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. App. 1991). The record does not indicate that the trial court abused its discretion.

The next issue for review is:

> 2. Whether the preponderance of the evidence supports the Trial Court's refusal to award alimony in solido or rehabilitative alimony to the Husband.

Husband asserts that the trial court erred by refusing to order Wife to pay him alimony. Husband claims that he is economically disadvantaged compared to Wife, since Wife retains more financial assets and has a greater earning capacity. Husband argues that this disadvantage is exacerbated by the fact that he is recovering from a heart condition. Thus, Husband seeks the awarding of rehabilitative alimony or alimony in solido.

Guidelines for the determination of alimony are set forth in T.C.A. § 36-5-101 (d) (Supp. 1997). The trial court has wide discretion concerning the award of alimony, and an appellate court should reverse the trial court's findings only in instances in which this discretion "has manifestly been abused." *Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn. App. 1989). The evidence preponderates in favor of the trial court's decision not to award alimony to either party. The extremely short duration of the marriage is a key factor that weighs against the awarding of alimony. T.C.A. § 36-5-101 (d)(1)(C); *Flanagan v. Flanagan*, 656 S.W.2d 1, 3-4 (Tenn. App. 1983). Furthermore, the record supports the trial court's finding that both parties are highly

7

intelligent business persons. T.C.A. § 36-5-101 (d)(1)(A) & (B).

Husband finally argues that the trial court erred by not awarding him attorney's fees. We find that the trial court acted within its discretion in refusing to award either party attorney's fees, and we also find that Husband is not entitled to his attorney's fees for purposes of this appeal.

The judgment of the trial court is affirmed. The case is remanded for such further proceedings are as are necessary. Costs on appeal are assessed to the appellant.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**