IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 25, 2006 Session

## IN RE: ESTATE OF PAUL HARRIS NELSON, ET AL.

Direct Appeal from the Probate Court for Madison County
No. 98-11528     James F. Butler, Chancellor sitting by Interchange

No. W2006-00030-COA-R3-CV - Filed March 22, 2007

This is an action in conversion, fraud, and breach of fiduciary duty instituted by will beneficiaries against the decedent's sister, who was also the Executrix of his estate. The threshold issue involves subject matter jurisdiction for this appeal. Although a recent amendment to the Tennessee Code would place appellate jurisdiction for this case in the trial court, we hold that a more specific, prior private act conferring appellate jurisdiction on this Court controls.

The second, and pivotal, issue in this dispute involves the ownership of four certificates of deposit (CD) that were purchased by Mr. Paul Harris Nelson (Mr. Nelson), the decedent, and that were later claimed and cashed by Ms. Margie Little (Ms. Little), the Defendant/Appellee, just prior to the opening of the estate. The Estate of Mr. Nelson (the Estate) appeals the lower court's ruling that Ms. Little owned the CDs at the time of Mr. Nelson's death because the siblings held the CDs jointly with a right of survivorship. Thus, the Estate also appeals the court's findings of no conversion, fraud, or breach of fiduciary duty by Ms. Little with respect to the CDs. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Robert V. Redding and Jonathan O. Steen, Jackson, Tennessee, for the appellant, Estate of Paul Harris Nelson.

W. Collins Bonds and William D. Bowen, Milan, Tennessee, for the appellee, Margie Ruth Nelson Little.

**OPINION**

This appeal involves the ownership of four certificates of deposit (CDs) purchased by the decedent, Mr. Paul Harris Nelson (Mr. Nelson). Ms. Margie Nelson Little (Ms. Little), Executrix of Mr. Nelson's estate, sister to Mr. Nelson, and also a beneficiary of the will, cashed all four CDs prior to the opening of the estate and retained the proceeds because, she asserted, she and Mr. Nelson held the CDs jointly with a right of survivorship. The beneficiaries of Mr. Nelson's will instituted an action against Ms. Little and alleged conversion, fraud, and breach of fiduciary duty in connection with Ms. Little's handling of the CDs. Mr. Nelson's estate (the Estate) claims that the CDs carried no right of survivorship and that they passed to the estate upon Mr. Nelson's death. Ms. Little[1], on the other hand, contends that because she and Mr. Nelson held the CDs jointly with right of survivorship, the instruments passed directly to her upon her brother's death and never became part of the probate estate. Following a bench trial, the court entered an order finding that Ms. Little, as survivor, owned the CDs outright when she cashed them and had neither committed fraud nor breached her fiduciary duty by retaining the proceeds from the CDs.

On appeal, the Estate challenges these findings, and both parties raise an additional threshold issue. In light of a statutory conflict between a recent amendment to the Tennessee Code and an existing private act, which yield different results concerning appellate jurisdiction, this Court is called to determine whether the general amendment impliedly repealed the jurisdictional provision in the private act, thus divesting this Court of subject matter jurisdiction in this case. We find no implied repeal, assume jurisdiction, and affirm.

### Facts and Procedural History

Mr. Nelson died testate on September 14, 1998, and, in his will, designated as Executrix his sister, Ms. Little. In addition to serving as Executrix, Ms. Little was also one of the beneficiaries of the will. Twelve days prior to her appointment as Executrix on October 22, 1998, Ms. Little cashed four certificates of deposit (CD), each with a $50,000 face value, issued by Medina Banking Company (Medina Banking) for Mr. Nelson, the sole depositor. One CD was payable to Mr. Nelson only, and the three (3) other CDs listed Mr. Nelson or Ms. Little as payee.

On October 22, 1998, Judge Christy Little admitted Mr. Nelson's will to probate in the Probate Division of Madison County General Sessions Court and ordered the issue of Letters Testamentary to Ms. Little as Executrix. After the approval of the final accounting and settlement on July 24, 2000, Ms. Little experienced difficulty obtaining the signed receipts for the final distributions to five of the beneficiaries even though four of the five had already cashed their checks. A sum of money remained in the checking account, however, because the other beneficiary who refused to sign the final receipt had also refused to cash the check. On September 12, 2000, Ms.

---

[1]Ms. Little died between the commencement of this action and trial. Although Ms. Luanne Kail, Executrix for Ms. Little's estate, was substituted as the Defendant on April 7, 2005, this opinion will refer to the Defendant/Appellee as Ms. Little so as to maintain consistency and clarity.

Little filed a "Petition to Deposit Inheritance Amount in Madison County General Fund; to Accept Affidavits in Lieu of Beneficiary Receipts; and to Close Estate." Some beneficiaries contested the closure of the estate, and in their response to Ms. Little's petition, alleged she and her attorney had intentionally withheld information regarding the estate from them and had directly contacted beneficiaries represented by counsel. Also filed with the response were a set of interrogatories and request for production of documents. After a series of filings including a motion to compel and another motion to close the estate, Judge Christie Little held a hearing and closed the estate on December 7, 2000, subject to its potential reopening after further discovery.[2]

On November 16, 2001, seven (7) beneficiaries filed a "Motion to Reopen Estate, Petition to Remove Executrix and Appoint Successor, and Complaint to Recover Estate Assets." The complaint, in essence, alleged breach of fiduciary duty, fraud, and conversion. The Plaintiffs sought the return of all estate assets wrongfully held by Ms. Little, the denial of compensation for Ms. Little as Executrix and for her attorney, plus pre-judgment interest on the converted assets and fees. In particular, the complaint stressed the intentional withholding[3] of financial information and other discovery abuses committed by Ms. Little. It cited various requests for paperwork, motions to compel, and, ultimately, the subpoena required to obtain the Medina Banking Company records. Ms. Little's answer contended that she had not committed discovery abuses, converted estate assets, or anything of the like because the CDs and checking accounts, held by Mr. Nelson and her jointly with the right of survivorship, passed directly to her at the death of her brother. Judge Little recused herself by order dated June 14, 2002, and transferred the case to Chancellor Joe Morris, who entered a consent order reopening the estate and appointing a successor administrator three days later. On August 12, 2003, the Estate was joined as an indispensable party plaintiff. Sitting by interchange[4] for Judge Little, Chancellor James F. Butler presided over the trial commencing on October 25, 2005.

Among the various documents admitted into evidence at trial were the four CDs issued by Medina Banking Company and an account agreement originally completed when Mr. Nelson opened a joint checking account, with a right of survivorship, at the bank. The checking account listed Ms.

---

[2] In the original order, Judge Little did not reference this conditional posture but corrected the omission, pursuant to Tennessee Rule of Civil Procedure 60, by entering a supplemental order to this effect on April 30, 2001.

[3] Ms. Little had identified the existence of two checking accounts and four CDs in the inventory and accounting but provided no further information because they were non-probate assets. Despite repeated requests for further information about the assets, Ms. Little refused to divulge anything more than the fact that they existed. In her formal response to the interrogatories, Ms. Little denied the request for further information because, according to her, it pertained to irrelevant, non-probate assets, some of which were protected under the Tennessee Financial Records Privacy Act. The petitioners eventually obtained the information by subpoena on June 26, 2001.

[4] Tennessee Code Annotated Section 17-2-206 provides that a judge sitting by interchange possesses the same power and retains the same jurisdiction as the judge for whom he or she is sitting. Tenn. Code Ann. § 17-2-206 (1994 & Supp. 2006). Although the trial took place in Chancery Court, Chancellor Butler was sitting by interchange for Judge Little, a General Sessions judge in the Probate Division. For these reasons, we address the jurisdictional issue below as if Judge Little had entered the judgment.

Little as the joint owner, and the parties stipulated prior to trial that, at the time of Mr. Nelson's death, ownership of the proceeds in the account passed directly to Ms. Little as the survivor. On the account agreement, four boxes had been checked in the section describing the type of account: "New," "Existing," "Checking," and "Time Deposit."

Three CDs, bearing numbers 10359, 10439, and 10491, were purchased by Mr. Nelson and payable to "Harris Nelson or Margie Little." The other CD, numbered 10398, was the second CD purchased by Mr. Nelson and listed only Mr. Nelson as the payee. All of the CDs bore the signature of Ms. Barbara Patterson, who issued them and testified to the circumstances surrounding each issuance at trial. Moreover, each CD stated a term of thirty-six months (36) and included the following language:

> For all purposes, including payment, presentation and transfer of this certificate, payment of interest hereon, and any notice, this bank may deem and treat as the absolute owner hereof any depositor named above. If more than one depositor is named above, this bank may deem and treat either or any of said depositors or the survivor as the absolute owner, and each such depositor shall be the agent of each other depositor for all of the foregoing purposes. . . . This certificate is transferable only on the books of this bank, in which event a new certificate of like tenor and amount will be issued to the transferee.

Three (3) witnesses from Medina Banking Company testified at trial. Mr. Charles King (Mr. King), President of Medina Banking Company, primarily testified to bank policies regarding the manner of designating a right of survivorship in CDs. Ms. Diane Eddings (Ms. Eddings) then testified to her involvement in opening Mr. Nelson's joint checking account. She stated that Mr. Nelson had desired to set up a joint account with right of survivorship and to include Ms. Little as the other joint owner. Ms. Eddings then reviewed the Consumer Account Agreement, also known to her as a "signature card," and confirmed that she checked the joint tenancy with right of survivorship box and marked "new" and "checking" as the type of account. The Consumer Account Agreement specified the account number to which it applied, which was in fact the joint checking account. Ms. Eddings additionally testified that the "Existing" and "Time Deposit" boxes were not checked at the time she opened the account and that she did not check them at any time thereafter. She further stated that, to her knowledge, such Consumer Account Agreements were not used by the bank when issuing CDs.

And, finally, Ms. Barbara Patterson, Assistant Vice President of Medina Banking Company, began her testimony by detailing the mechanics of issuing CDs for Medina Banking Company. Ms. Patterson was a cashier when the instant transactions occurred and issued all four CDs at Mr. Nelson's request. Ms. Patterson testified to having known Mr. Nelson for approximately two to three years at the time he purchased his first CD. As treasurer of a local cemetery, he had purchased other CDs from Ms. Patterson, who found him to be very knowledgeable about such matters. Ms. Patterson then described the circumstances under which Mr. Nelson purchased each CD and

confirmed that he had been very specific each time about wanting a right of survivorship for each CD made payable to Ms. Little or himself.

Ms. Patterson's testimony then turned to the events surrounding the modification of the CD payable only to Mr. Nelson. According to Ms. Patterson, Mr. Nelson initiated a conversation with her about his desire that all of his money at Medina Banking Company go to Ms. Little at his death. Mr. Nelson was "really concerned" about his accounts, particularly the CD made payable only to him, and worried that "Miss Margie . . . would not get his money." She described her proposed solution as follows:

> And he - - he knew that he had one CD that was not labeled [like the other three], and I told him that we could take care of that and all of his CDs with this account agreement, because we have a place on there for time deposits for new and existing accounts, which the new was already marked because it was - - he opened this account - - the checking account opened and it became a new account.

To modify the CD's terms, she marked the "Time Deposit" and "Existing" boxes on the checking account consumer agreement and failed to date the changes or have them signed by Mr. Nelson, an omission she admitted was a mistake. She testified that Mr. Nelson specifically asked if this modification would achieve the change he desired, and Ms. Patterson assured him that it would. Apparently, Ms. Patterson believed that the modification would extend the joint tenancy with right of survivorship to all time deposits, or CDs, then existing.

The vigorous cross-examination continued. When challenged on bank policy regarding the proper designation for a right of survivorship, Ms. Patterson ultimately identified at least three methods used by bank employees: separating the payees by "or," following the direction of the customer, whatever that may be, and specifying "joint tenancy with right of survivorship" after the payee names. Likewise, Ms. Patterson responded to a flurry of questions regarding the proper way to modify a CD. She acknowledged that the typical method required a surrender of the existing CD and re-issuance of a new one, consistent with the terms on the face of the instruments. She also stated that Mr. Nelson could have brought the CD to the bank, and Ms. Patterson could have added Ms. Little's name on the payee line and have Mr. Nelson and Mr. King initial the change. Regarding the reasons for handling the modification as she did, Ms. Patterson stated that "[t]o have cashed in his CD, he would have been charged a substantial penalty, and we didn't feel like he needed to be charged a penalty to cash in a CD and purchase another one." She conceded that the bank did not ask its customers to complete a Consumer Account Agreement when purchasing CDs, but she clearly remembered discussing this method with Mr. King prior to using the agreement to modify the CD.[5]

---

[5] When called again as a rebuttal witness, Mr. King did not remember having such a discussion with Ms. Patterson.

Ms. Patterson responded to counsel's challenge to her memory of each exchange with Mr. Nelson by confirming that he had wanted the right of survivorship for the CDs and that she was "sure [she] talked to him because . . . that is something [she talks] to every customer about." Counsel for Ms. Little asked, "[a]ny doubt in your mind about what Mr. Nelson told you what his intention was with regard to who was to get all of his money?" and Ms. Patterson stated there was no doubt that Ms. Little was to get the money.

By order entered on December 20, 2005, the chancellor ruled that all four CDs had passed directly to Ms. Little at the time of Mr. Nelson's death and that Ms. Little had not converted the CDs, committed fraud, or breached her fiduciary duty when she cashed them. The parties had stipulated prior to trial to Ms. Little's improper retention of proceeds from an insurance policy, and the judge found a breach of fiduciary duty there. He ordered counsel for the parties to set a hearing on the bifurcated issues (also stipulated by the parties prior to trial) and directed the entry of the order as a final judgment pursuant to Tennessee Rule of Civil Procedure 54.02. Incorporated by reference into the final order, the chancellor's extensive findings of fact explained the judgment in full. Of particular significance were the following findings:

9. The Bank engaged in a sloppy, if not inappropriate method to comply with the request of Nelson that he "wanted his money to go to his sister."

10. Nelson believed that his goal was accomplished when Barbara Patterson checked the blocks on Exhibit 17 and told him it would cover all his CDs.

11. Nelson's intent was for all the funds represented by the four CDs to go to Little. The testimony of Patterson was admissible to establish his intent as an exception to the hearsay rule. Extrinsic evidence is admissible to establish intent as to type of ownership.

12. It was the practice of the Medina Banking Company at the time of the purchase of the four CDs, that if a CD was opened in a person "or" a person, it was a right of survivorship CD. If it was not to be a survivorship instrument, the words would be written out, i.e., "without right of survivorship."

13. The Bank's policy, then and now, is that the customer describes how the customer wants the CD to be designated, i.e., with or without right of survivorship. The Bank them [sic] employs its designations to accomplish that purpose.

14. The Bank officials who testified have nothing to gain or lose by testifying as they did at the trial.

. . . .

17.   Even if the marking of the time deposit blocks on Exhibit 17 by Patterson was not the appropriate method of changing CD number 10398, there is little doubt in the Court's mind that Nelson intended that change to be in effect, and if Nelson had been advised that other methods were necessary, Nelson, given his level of financial sophistication, would have employed those methods. The Bank's missteps, if they are such, do not effect [sic] the evidence of Nelson's intent.

18.   The testimony of Barbara Patterson, coupled with the testimony of Charles King, and Diane Eddings, and the documents involved, leave the Court's mind at ease that the intent of Nelson was that the funds in the four Certificates of Deposit were to go to Little. This evidence is clear and convincing and sufficient to rebut the presumption set out in the statute.

19.   The Court is of the opinion that the statutory designation described in Tennessee Code Annotated § 45-2-703(d)(1)(C) as referred to in Tennessee Code Annotated § 45-2-703(e)(3) is satisfied by the Bank's designation of the word "or" as being synonymous with "right of survivorship."

20.   The case of [*Carmical*] *v. Kilpatrick*, relied on by the Plaintiffs, in the Court's opinion is not on point because in the instant case, as opposed to the [*Carmical*] case, there was not only the designation "or" on the three CDs here, but in addition, there was clear, unrebutted evidence of Nelson's intent.

21.   Even applying the statutory presumption on CD number 10398, the direct (not circumstantial) evidence presented through the testimony of Barbara Patterson as to the intent of Nelson, coupled with the timing of and purchase of other CDs and opening of the joint account, is sufficient to overcome the presumption.

### *Issues Presented and Standard of Review*

We restate the issues on appeal as follows:

(1)   Whether jurisdiction of this appeal lies properly in this Court;

(2)   Whether the trial court erred in awarding CD numbers 10359, 10439, and 10491, all payable to "Harris Nelson or Margie Little," to Ms. Little by virtue of her right of survivorship;

(3)   Whether the trial court erred in awarding CD number 10398, payable to "Harris Nelson," to Ms. Little by virtue of her right of survivorship; and

(4)     Whether the trial court erred in finding that Ms. Little had not committed fraud, converted the CDs, or breached her fiduciary duty as Executrix when she cashed the CDs and retained the proceeds.

The resolution of these issues requires this Court to undertake several tasks. First, we must determine whether a recent amendment to Section 30-2-609 of the Tennessee Code impliedly repealed a private act conferring appellate jurisdiction on this Court for cases tried in the Probate Division of Madison County General Sessions Court.

To review the court's ruling regarding the CDs, we must determine whether, in including the "other deposit designation" provisions of Tennessee Code Annotated Section 45-2-703, the legislature intended that banks be able to depart significantly from the statute's "joint tenancy with right of survivorship" language as a "designation" of that ownership interest. Because we conclude the legislature did not intend "other deposit designation" to have such a broad scope, we then turn to the issue of whether Ms. Little rebutted the power of attorney presumption raised by Section 45-2-703(e)(4) with clear and convincing evidence that Mr. Nelson intended, and did, establish a contractual right of survivorship in her.

We also must address whether Ms. Little could and did prove the modification of the CD payable only to "Harris Nelson" through the testimony of a bank employee. And, finally, we evaluate the Estate's claims of fraud and breach of fiduciary duty in light of our foregoing analysis.

Because the parties tried this case without a jury, we review decisions of the trial court *de novo* on the record, presuming the findings of fact to be correct, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); *In re: Miller*, 158 S.W.3d 429, 434 (Tenn. Ct. App. 2004).

This Court reviews credibility determinations made by the trier of fact with great deference. *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)(citing *Mays v. Brighton Bank*, 832 S.W.2d 347, 352 (Tenn. Ct. App. 1992)). The rationale for this deference is that trial courts observe witnesses as they testify and can draw inferences from their demeanor, thus placing those courts in the better situation to assess witness credibility. *Id.* Accordingly, appellate courts will re-evaluate a trial judge's credibility determination only when clear and convincing evidence to the contrary exists. *Id.*

We review the trial court's conclusions of law, however, *de novo* with no presumption of correctness. *In re: Miller*, 158 S.W.3d at 434 (citing *Akins v. Clark*, 59 S.W.3d 124, 126–27 (Tenn. Ct. App. 2001)). Questions of contract formation, contract interpretation, and statutory construction are all questions of law and subject to review under this standard.

*Analysis*

*1. Appellate Jurisdiction*

In this appeal of a decision from the general sessions probate court[6] of Madison County, the first issue[7] involves a conflict between a private act conferring appellate jurisdiction on this Court and a recent amendment to the Tennessee Code that would direct an appeal from the probate division to the trial court for a trial de novo. In its 2002 amendment to Tennessee Code Annotated Section 30-2-609 (hereafter "the 2002 amendment to the Tennessee Code"), the legislature addressed subject matter jurisdiction for appeals of probate cases decided by general sessions judges (as opposed to circuit judges or chancellors). *See* 2002 Tenn. Pub. Acts 1874, 1874–75 (codified as amended at Tenn. Code Ann. § 30-2-609 (2001 & Supp. 2006)). As amended, the code section governs appellate jurisdiction according to county population and, in pertinent part, provides that:

> (c) Except in any county having a population of five hundred thousand (500,000) or more according to the 2000 federal census or any subsequent federal census, the appeal of any decision, ruling, order, or judgment of a probate court that is served by a judge who is not the circuit court judge or chancellor of the judicial district in which the matter arose shall be to the appropriate trial court of general jurisdiction in which case the trial judge shall hear the matter de novo.

Tenn. Code Ann. § 30-2-609(c)(2001 & Supp. 2006). Because Madison County falls within this population bracket, this subsection would appear to place appellate jurisdiction in the trial court rather than this Court. On the other hand, the legislature's 1986 amendment to Chapter 50 of the Private Acts of 1941 declared that "[t]he court of appeals shall have jurisdiction of all appeals from the decisions of the [Madison County] General Sessions Court, Division II (Probate Division) relative to probate matters and the matters above set out." 1986 Tenn. Priv. Acts 150, 151. Thus, the question before this Court is whether the 2002 amendment to the Tennessee Code impliedly repealed the 1986 amendment to Chapter 50 of the Private Acts of 1941, thereby divesting this Court of subject matter jurisdiction over this case. We first note that the 1986 amendment to the 1941 Private Act merely codified existing practice. This Court's decision in *In re: Williams* confirmed that direct appeals from the probate division of the General Sessions Court to this Court was proper, and the Tennessee Supreme Court later affirmed that holding. *See In re: Williams*, Madison Law No. 1, 1985 Tenn. App. LEXIS 2889 (Tenn. Ct. App. 1985), *perm. app. granted and judgment amended* (Tenn. Nov. 18, 1985) (holding by the Tennessee Supreme Court that "appeals from the

---

[6]As noted above, we treat this judgment as one entered by the general sessions probate court because the chancellor was sitting for the general sessions probate judge by interchange.

[7]The first issue comprises a matter initially raised by the parties on motion. On June 2, 2006, the parties jointly filed a Rule 22 motion with this Court and requested a ruling that this Court retain appellate jurisdiction over the case notwithstanding the statutory conflict between the Tennessee Code and the Private Acts of 1941. The parties also filed a notice of appeal in the Madison County Circuit Court, but the trial judge stayed the proceedings pending this Court's resolution of the matter.

probate division of the General Sessions Court of Madison County should be taken to the Court of Appeals rather than the Circuit Court"). In that case, this Court held that, when enacting Chapter 243 of the Private Acts of 1982, the legislature intended to "establish the Probate Court of Madison County with all of the powers and privileges of the chancery court which includes its status as a court of record from which an appeal will lie . . .[in] the Court of Appeals." *Id.* at \*12–13. We reasoned that the general provisions pertaining to appeals from General Sessions Courts did not apply to the probate division because the legislature had vested it with original subject matter jurisdiction for probate matters. *See id.* In 1986, however, the legislature expressly provided for direct appeals to this Court from the probate division of Madison County's General Sessions Court. 1986 Tenn. Priv. Acts 150, 151.

Although a private act is "superseded as far as is necessary to give effect to a general statutory scheme of statewide application," Tennessee law disfavors repeals by implication and will recognize one only when no reasonable construction will allow the conflicting acts to stand together. *Knox County Educ. Ass'n v. Knox County Bd. of Educ.,* 60 S.W.3d 65, 74 (Tenn. Ct. App. 2001) (citing *Kentucky-Tennessee Clay Co. v. Huddleston,* 922 S.W.2d 539, 542 (Tenn. Ct. App. 1995); *Cronin v. Howe,* 906 S.W.2d 910, 912 (Tenn.1995)). In resolving statutory conflicts, we presume that the legislature knows the state of the law and, relying on this presumption, seek to ascertain whether the conflicting provisions can be construed to operate together harmoniously. *State v. Davis*, 173 S.W.3d 411, 415 (Tenn. 2005). Indeed, a finding of repeal by implication is appropriate only when conflict is inescapable. *Knox County Educ. Ass'n,* 60 S.W.3d at 74 (quoting *Pacific Eastern Corp. v. Gulf Life Holding Co.,* 902 S.W.2d 946, 954 (Tenn. Ct. App. 1995)).

The instant statutes can coexist harmoniously under the well-established rule that specific statutory language controls statutory provisions expressed in more general terms. *See Davis,* 173 S.W.3d at 415; *Arnwine v. Union County Bd. of Educ.*, 120 S.W.3d 804, 809 (Tenn. 2003); *State v. Cauthern,* 967 S.W.2d 726, 735 (Tenn. 1998); *State v. Safley*, 112 S.W.2d 831, 833 (Tenn. 1938). In *State v. Safley*, the Tennessee Supreme Court quoted authority on this subject as follows:

> Where there is a general provision applicable to a multitude of subjects, and also a provision which is particular and applicable to one of these subjects, and inconsistent with the general provision, it does not necessarily follow that they are so inconsistent that they both cannot stand. The special provision will be deemed an exception, and the general provision will be construed to operate on all the subjects introduced therein except the particular one which is the subject of the special provision.

*Safley*, 112 S.W.2d at 833 (quoting *Bd. of Park Comm'rs v. Nashville*, 185 S.W. 694, 698 (Tenn. 1916)(citation omitted)). Moreover, "[a] special provision in a statute will control a general provision which would otherwise include that mentioned in the particular provision." *Id.* (quoting *Hayes v. Arrington*, 68 S.W. 44, 46 (Tenn. 1902)).

Applying the above rules of statutory construction, we hold that the 2002 amendment to Section 30-2-609 of the Tennessee Code did not impliedly repeal the private act's provision, passed

in 1986, that confers appellate jurisdiction on this Court. The 2002 amendment to the Tennessee Code governs appellate jurisdiction in a general fashion by classifying the general sessions probate courts according to county population, whereas Chapter 50 of the Private Acts of 1941 applies specifically to Madison County. But for the legislature's 1986 amendment to the Private Acts of 1941, Tennessee Code Annotated Section 30-2-609 would place appellate jurisdiction in the trial court; however, in light of the private act's specificity as to the affected county, the legislature's presumed knowledge of this private act, and the statutory silence regarding an intent to repeal this and other similar private acts, we hold that Chapter 50 of the Tennessee Private Acts of 1941, as amended in 1986, removes Madison County from the scope of Section 30-2-609. In other words, the 1986 amendment to the Private Acts is an exception to the general operation of Section 30-2-609. Accordingly, appellate jurisdiction for this case lies in this Court.

## 2. Ownership of Certificates of Deposit

### A. Applicable Law

The primary question before this Court is whether Ms. Little owned the CDs when she cashed them. To answer this question, we must determine whether Mr. Nelson and Ms. Little held all four CDs jointly with a right of survivorship. If so, then the CDs would have passed directly to Ms. Little upon her brother's death and would never have become part of the probate estate. If the CDs were never estate assets, then the Estate's allegations of conversion, fraud, and breach of fiduciary duty cannot stand.

Subsections (c) through (e) of Tennessee Code Section 45-2-703, apply to the certificates of deposit in question. They provide that:

(c) As used in subsections (c)–(f), "multiple-party deposit account" means a deposit account (including a certificate of deposit) established in the names of, payable to, or in form subject to withdrawal by two (2) or more natural persons or any of them, including, but not limited to, an account of the type described in subsection (a).

(d)(1) When opening a multiple-party deposit account, or amending an existing deposit account so as to create a multiple-party deposit account, each bank shall utilize account documents which enable the depositor to designate ownership interest therein in terms substantially similar to the following:

(A) Joint tenants with right of survivorship;

(B) Additional authorized signatory; and

(C) Such other deposit designation as may be acceptable to the bank.

(2) Account documents which enable the depositor to indicate the depositor's intent of the ownership interest in any multiple-party deposit account may include any of the following:

(A) The signature card;

(B) The deposit agreement;

(C) A certificate of deposit;

(D) A document confirming purchase of a certificate of deposit; or

(E) Such other document provided by the bank or deposit institution which indicates the intent of the depositor.

(e) Accounts described in subsection (c) shall establish the following interests:

(1) A designation of "joint tenants with right of survivorship," or substantially similar language, shall be conclusive evidence in any action or proceeding of the intentions of all named that title vests in the survivor;

(2) The designation of a person as "additional authorized signatory," or substantially similar language, shall be conclusive evidence in any action or proceeding that the person so designated has power of attorney with respect to such account and is not an owner of such account;

(3) Other designations acceptable to the bank shall establish interests in accordance with their respective provisions; and

(4) In the absence of any specific designation in accordance with subsection (d), property held under the title, tenancy by the entireties, carries a right of survivorship; property held under the title, joint tenancy, carries no right of survivorship unless a contrary intention is expressly stated. Any other person to whose order the accounts or certificate of deposit is subject shall be presumed to have power of attorney with respect thereto and not to be an owner thereof. Such presumption may be rebutted by clear and convincing evidence presented in the course of legal or equitable proceedings. Final judicial determinations contrary to such presumptions shall not affect a bank's earlier payment in accordance therewith, or the limitations on liability conferred by the provisions of subsections (a) and (b) . . . .

Tenn. Code Ann. §§ 45-2-703 (c)–(e) (2000). This statute limits bank liability for improper payments from or management of multiple-party deposit accounts, but it requires banks to provide a means for the depositor to designate, with specificity, the ownership interests of the parties listed on the account. *See id.* The account documents used for this designation may include, among other forms, a signature card, a deposit agreement, or the certificate of deposit itself. *Id.* § 45-2-703 (d)(2). When a court considers issues pertaining to the ownership of multiple-party deposit accounts, it must first look to the account documents, if any, to ascertain whether the depositor has made a specific designation. *See Carmical v. Kilpatrick*, No. M2002-00346-COA-R3-CV, 2002 WL 31863293, at *2–3 (Tenn. Ct. App. Dec. 23, 2002)(*no perm. app. filed*). If there is no specific designation, the statute establishes a rebuttable presumption that named parties other than the depositor have power of attorney rather than an ownership interest in the account. Tenn. Code Ann. § 45-2-703 (e)(4). This presumption may be rebutted by clear and convincing evidence. *Id.*

### B.  *Ownership of Certificate of Deposit Numbers 10359, 10439, and 10491, Payable to "Harris Nelson or Margie Little"*

Mr. Nelson purchased all three CDs himself at different times:  CD number 10359 on October 25, 1997, CD number 10439 on March 6, 1998 (the same day he opened a joint checking account with right of survivorship and listed Ms. Little as joint owner), and CD number 10491 on May 7, 1998.  At the time of each purchase, he directed that all three CDs list "Harris Nelson or Margie Little" as payee and, according to Ms. Patterson, discussed with her his intent to establish a joint tenancy with right of survivorship so that Ms. Little would receive the money at his death.

Following the trial, the chancellor found that, with respect to these three CDs, the use of "or" constituted a specific designation pursuant to Section 45-2-703(d)(1)(C), which allows for "other deposit designation[s] as may be acceptable to the bank."  On appeal, the Estate contends there was no designation, thus giving rise to an unrebutted presumption of a power of attorney and nothing more.  Ms. Little, on the other hand, concedes the lack of a specific designation[8] but asserts that the evidence at trial clearly and convincingly rebutted this presumption.

We first address the chancellor's finding that "or" constituted a specific designation of joint tenancy with a right of survivorship under the statute.  After thorough consideration of the matter, we cannot agree with this finding because it would require a statutory interpretation rendering subsection (d)(1) meaningless and frustrating the purpose of the statute as a whole. Adhering to general principles of statutory construction, we read statutory language according to its plain meaning, and if it is unambiguous, we cannot force an interpretation that would alter the statute's application.  *See Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Where an ambiguity exists, we seek to ascertain the legislature's intent and purpose by looking to the entire statutory scheme and by considering the purpose for which the language was selected. *See id.*  In interpreting the provisions of Tennessee Code Annotated Section 45-2-703, as with any other portions of the same statute, this Court reads the provisions *in pari materia* and presumes that the legislature intended for each word in the statute to have meaning.  *Faust v. Metro. Gov't of Nashville*, 206 S.W.3d 475, 489–90 (Tenn. Ct. App. 2006). Thus, we endeavor to effectuate the intent of the legislature by avoiding an interpretation that would render the statute's language meaningless, redundant, or superfluous.  *Eastman Chem. Co.*, 151 S.W.3d at 507; *Faust,* 206 S.W.3d at 489 (quoting *Tidwell v. Collins,* 522 S.W.2d 674, 676–77 (Tenn. 1975)); *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002) ("The Court has a duty to construe a statute so that no part will be inoperative, superfluous, void or insignificant.  The Court must give effect  to every word, phrase, clause, and sentence of the Act in order to achieve the

---

[8]The  brief  submitted  on  behalf  of  Ms.  Little  immediately  applies  section  (e)(4)  of  the  statute  (governing accounts without a designation) because "no account agreement was utilized when each of the certificates of deposit was purchased."  We note that the CD itself may serve as an account document designating the depositor's intent.  *See* Tenn. Code Ann. § 45-2-703(d)(2)(C) (2000 & Supp. 2006).  Even though we have analyzed the CDs as potential "account documents" as contemplated by the statute, we arrive at the same conclusion as stated in Ms. Little's brief, that there was no specific designation.

Legislature's intent, and it must construe a statute so that no section will destroy another."(citations omitted)).

In 1981 this Court considered a previous version of this statute and discussed the policy behind its enactment:

> The bank is a mere stakeholder of the funds in a joint account. It is unable to determine who is legally entitled to such funds upon the death of one of the parties. In the absence of a contract the funds may belong to the survivor, the estate of the decedent, or to both in the same ratio as their contributions to the account. Such was the state of the law when T.C.A. s 45-2-703 was enacted in 1969 . . . . The position of the bank was quite precarious even with regard to apparent survivorship accounts prior to the adoption of the contract theory since the survivorship aspect of each joint account was dependent on the facts in each case and the existence of a bank signature card was not conclusive . . . . the bank is protected by the statute when after the death of one of the joint owners of the account it pays the funds in the accounts to the other joint owner. . . . It . . . relieves the bank of any liability to [third parties] for paying funds to the person shown on their records as a joint owner.

*Simmons v. Foster,* 622 S.W.2d 838, 843 (Tenn. Ct. App. 1981). Even though the legislature has amended Section 45-2-703 several times since 1981, we can find no reason to presume that its underlying purpose has changed. The existence and nature of joint tenancies in bank accounts remain the subjects of much litigation in this state. The legislature's amendments addressing ownership designations for multiple-party deposit accounts evince a quest for clarity, certainty, and a reasonable amount of uniformity so as to reduce error and limit bank liability for the payment of funds from such accounts. *See* 1988 Tenn. Pub. Acts 861, 861–63.

As we read this provision, a "designation" on an account document must include "joint tenants with the right of survivorship" or, as noted in the statute, another substantially similar expression (hereafter "JTWROS language"), to specify that type of ownership interest. If it does not, then subsection (e)(4), which governs accounts lacking designations, will control. Reliance on "other deposit designation[s]" under subsection (d)(1)(C) to qualify "or" as a proper designation would, by implication, limit bank liability while conferring unfettered discretion in designation word choice. This reading of the statute runs counter to the purpose of the statute as a whole and frustrates the legislative attempt to insure clarity, certainty, and a reasonable amount of uniformity in the opening and managing of multiple-party deposit accounts.

Had the legislature sought to confer such unfettered discretion, it would not have stated that "bank[s] shall utilize account documents which enable the depositor to designate ownership interest therein *in terms substantially similar to the following: . . .* [j]oint tenants with right of survivorship." *See* Tenn. Code Ann. § 45-2-703(d)(1)(A) (2000). Notwithstanding this language, we might view the JTWROS language as a suggestion rather than a requirement if the

-14-

statute presented the ownership interest designations in the disjunctive (*i.e.*, A, B, or C). But the designation terms are not separated by "or." Instead, the provision states that banks shall allow depositors to designate ownership interest in the following terms (or terms substantially similar): JTWROS language, additional authorized signatory, *and* other designations acceptable to the bank. *See* § 45-2-703(d)(1). We interpret the "other designations" to exclude terminology dissimilar to the JTWROS language where that designation is intended.

The chancellor's findings referred to subsection (e)(3) in conjunction with subsection (d)(1). Subsection (e)(3) of the statute provides that "[o]ther designations acceptable to the bank shall establish interests in accordance with their respective provisions." Tenn. Code Ann. § 45-2-703(e)(3) (2000). When read by itself, this provision seems to remove all guidelines for the designation of ownership interests. But, upon reading it in the context of the whole statute, we note that the legislature drafted the statute in a parallel fashion so that subsection (d)(1) addresses the terminology used for designations, and subsection (e) describes the respective interests created by using the terminology in (d)(1). Subsection (e)(3), then, does give banks discretion in the terminology used (via (d)(1)(C)) to name and thus create ownership interests *other than* joint tenancies with a right of survivorship and rights as an additional authorized signatory. For example, such "other designation[s]" might include a payable-on-death (POD) designation, which Medina Banking Company has already offered as an option on its account agreements.

As relevant to this case, the statute thus deems only a "designation of 'joint tenants with right of survivorship,' *or substantially similar language*," to be conclusive evidence of a right of survivorship. *See* Tenn. Code Ann. § 45-2-703(e)(1). Because "or" is plainly different from JTWROS language, there is no designation as contemplated by the statute. In its absence, subsection (e)(4) now applies, and we turn to consider whether Ms. Little presented clear and convincing evidence to rebut the presumption of a power of attorney.

Our law's adherence to the contract theory for the creation of joint tenancies with the right of survivorship narrows the scope of exactly what must be proven clearly and convincingly. *See Lowry v. Lowry*, 541 S.W.2d 128, 130–32 (Tenn. 1976). A review of Tennessee law reveals that, under these facts, the proof must show clearly and convincingly that the depositor contracted with the bank and, at the time of contract formation, intended to make the purported survivor a third-party beneficiary of the contract. *See, e.g., Merchants & Planters Bank v. Myers*, 644 S.W.2d 683, 689 (Tenn. Ct. App. 1982); *Simmons*, 622 S.W.2d at 842; *Carmical v. Kilpatrick*, No. M2002-00346-COA-R3-CV, 2002 WL 31863293, at *4 (Tenn. Ct. App. Dec. 23, 2002) (*no perm. app. filed*). In our state, when a non-depositor acquires a right of survivorship in a joint account by gift, the depositor and bank have entered into a third party beneficiary contract establishing the non-depositor as a donee beneficiary. *Williams v. Clyce*, Madison Law No. 1, 1987 WL 11118, at *3 (Tenn. Ct. App. May 22, 1987)(*no perm. app. filed*); *Simmons v. Foster*, 622 S.W.2d 838, 841–42 (Tenn. Ct. App. 1981). If the express language of the contract is ambiguous regarding the right of survivorship, a party may prove the depositor's intent by extrinsic evidence, including oral testimony. *Simmons*, 622 S.W.2d at 842 ("We hold . . . that the contract necessary to create a joint account with the right of survivorship may be proved by oral

testimony and that the right of survivorship may vest in a third party beneficiary who was not a party to the agreement between the bank and depositor.").

For example, in *Simmons v. Foster*, this Court found a right of survivorship based solely on a bank officer's testimony regarding a conversation with the depositor at the time he opened a joint savings account. *Id*. The depositor stated that he wanted the defendant/survivor to receive the money out of the joint account if something happened to him. *Id.* Other than the multiple-party account name (depositor "or" donee), there was no evidence to corroborate the teller's testimony regarding the depositor's intent. *See id.* Yet, even though oral testimony was sufficient in *Simmons*, the standard remains the same. In general, purported beneficiary/survivors unable to offer oral or written proof of the depositor's intent to contract for a right of survivorship have failed to establish the existence of such a contract. *See, e.g., In re: Miller*, 158 S.W.3d 429 (Tenn. Ct. App. 2004)(finding purported beneficiary's uncorroborated testimony insufficient); *Carmical v. Kilpatrick*, No. M2002-00346-COA-R3-CV, 2002 WL 31863293 (Tenn. Ct. App. Dec. 23, 2002)(*no perm. app. filed*)(finding bank's policy of using "or" to indicate right of survivorship, purported beneficiary's ability to sign checks, and closeness of relationship between deceased depositor and purported beneficiary lacking as proof of depositor's intent); *In re: Verkstrom*, No. 03A01-9808-CH-00267, 1999 Tenn. App. LEXIS 63 (Tenn. Ct. App. Jan. 28, 1999)(*no perm. app. filed*)(finding bank's treatment of account as carrying a right of survivorship insufficient evidence to maintain claim); *Williams v. Clyce*, Madison Law No. 1, 1987 WL 11118 (Tenn. Ct. App. May 22, 1987)(*no perm. app. filed*) (finding purported beneficiary's testimony tended to prove only a custodial interest); *Barnhart v. Newman*, Shelby Equity No. 51, 1985 Tenn. App. LEXIS 2897 (Tenn. Ct. App. May 28,1985) (*no perm. app. filed*).

Here, the Estate asserts that Ms. Little failed to present clear and convincing evidence to rebut the presumption of a power of attorney. First, it contends that Ms. Patterson's testimony regarding her conversation with Mr. Nelson was inadmissible hearsay because his expressions constituted statements of "remembered intent," rather than those of present intent excepted by Tennessee Rule of Evidence 803(3).[9] Moreover, the Estate cites the *Carmical* case for the proposition that bank policies are not evidence of a depositor's intent. The Estate also argues that even if Ms. Patterson's testimony is admissible, the case of *Barnhart v. Newman* still requires as proof of intent some action on the part of the depositor, which the Estate assures was not shown. Finally, it characterizes Ms. Patterson's testimony as conflicting, changing, and equivocal. In other words, it argues, her testimony fell short of the clear and convincing standard.

---

[9]Rule 803(3) provides that "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will" is not excluded by the hearsay rule. Tenn. R. Evid. 803(3).

At trial, Ms. Patterson testified that when Mr. Nelson purchased CD number 10359 on October 25, 1997, and directed that it be payable to "Harris Nelson or Margie Little," she was "very specific with him because [she] asked him if he wanted Ms. Little to have this money at his death, because [as it was written then,] it [meant] either/or.  And he was very specific.  He said, 'Yes, I want her to have it at my death.'"  On March 6, 1998, Mr. Nelson purchased CD number 10439, also payable to "Harris Nelson or Margie Little."  Ms. Patterson confirmed that the same exchange regarding his intent took place on that day.  On May 7, 1998, Mr. Nelson purchased CD number 10491, styled just as the other two-party CDs, and Ms. Patterson again confirmed the substance of their conversation regarding his intent with respect to the right of survivorship.  We fail to see how these statements made by Mr. Nelson at the time he purchased each CD would constitute "remembered intent" as suggested by the Estate.  Cast as hearsay, these statements were admissible as an exception to hearsay under Tennessee Rule of Evidence 803(3).

We do agree with the Estate's assertion that a bank's policy, with nothing more, fails to prove a depositor's intent but find the *Carmical* case to be inapplicable here.  We concur in the chancellor's rejection of *Carmical* as controlling authority because, unlike the proof in *Carmical*, Ms. Patterson's testimony provides direct evidence of Mr. Nelson's intent to make Ms. Little a donee third-party beneficiary of the contracts.

Placing great emphasis on this Court's decision in the case of *Barnhart v. Newman*, the Estate argues that something more than intent - - some action on the part of the depositor - -  is required to prove survivorship rights in a joint account.  *See Barnhart v. Newman*, Shelby Equity No. 51, 1985 Tenn. App. LEXIS 2897 (Tenn. Ct. App. May 28, 1985)(*no perm. app. filed*).  That case involved an action brought by will beneficiaries against the decedent's nephew, also the executor of the estate, who claimed ownership of two CDs that were payable to the decedent "or" the nephew.  *Barnhart*, 1985 Tenn. App. LEXIS 2897, at *2.  There was no dispute that the nephew had purchased the CDs by himself with the decedent's funds or that the decedent had never entered into any contract, nor had any dealings whatsoever, with the issuing bank.  *Id.*  Only the defendant nephew testified to the decedent's intent that the CDs belong to him at her death.  *Id.* at *3.  Yet, there was no evidence of this intent in the form of testimony from a bank employee or from a writing other than the CD itself.  *See id.* at *6–7.  The only other testimony involved statements made by the decedent to third parties *after* the purchase of the CDs and were unrelated to the decedent's intent at the time of purchase.  *Id.*

Although the defendant in *Barnhart* cited the *Simmons* case for the proposition that oral testimony can prove a contract creating a joint account with a right of survivorship, this Court noted that the *Simmons* authority served to undercut the defendant's case rather than advance it because, unlike the facts in *Simmons*, there was no evidence of a contract between the deceased depositor and the issuing bank.  *Id.* at *8.  In situations involving a single depositor who establishes a joint account with right of survivorship, "the survivor is considered to be the donee of a contract between the deceased depositor and the bank."  *Id.* at *9 (citing *Chambers v. Henry*, 628 S.W.2d at 742).  This Court further stated that

it is made clear from *Chambers v. Henry, supra*, that proving intent alone is not sufficient. There must be some action on the part of the depositor evidencing a contract that embraces the right of survivorship. The certificates of deposit in this case do not use survivorship language. There is no evidence of any bank personnel having discussed the establishment of survivorship rights in the certificates of deposit. Further, there is no evidence that the defendant, even if we assume he acted as the decedent's agent, did in fact contract with the bank for survivorship rights in the instruments. All the evidence shows is that joint certificates were created. As we have seen, however, proof of a joint account is not sufficient proof of the right of survivorship.

*Barnhart v. Newman*, Shelby Equity No. 51, 1985 Tenn. App. LEXIS 2897, at *9–10 (Tenn. Ct. App. May 28, 1985)(*no perm. app. filed*). The Estate has extracted only a portion of the above quote from *Barnhart* and drawn the conclusion that proof of intent alone is insufficient to establish survivorship rights in a jointly held CD. The Estate emphasizes that "some action on the part of the depositor" is required.

The *Barnhart* case is readily distinguishable from the case at bar. The determinative issue in *Barnhart* was the absence of evidence that the depositor entered into a contract with the bank. Considered in light of this fact, this Court's requirement of depositor action makes sense. If there is no evidence of the contract required to establish a right of survivorship, then proof of intent, by itself, cannot make up the evidentiary shortfall. But the instant facts clearly reveal multiple contracts between Mr. Nelson and the bank as well as his intent to establish Ms. Little as the donee third-party beneficiary of those contracts. Not only did Mr. Nelson purchase the CDs himself, but he also communicated his intent to Ms. Patterson with the purchase of each CD. His intent to establish a right of survivorship in Ms. Little, as understood by Ms. Patterson, came to form the basis of their bargain and was a term to which the parties mutually assented.

Finally, we note that the Estate characterizes Ms. Patterson's testimony as less than credible. Our review of the transcript reveals vigorous (and often effective) cross-examination on the question of bank policies, but Ms. Patterson's testimony regarding her conversations with Mr. Nelson about his intent remained unwavering throughout. To the extent that counsel for the Estate impeached the credibility of her testimony regarding bank policy, the degree of impeachment on that issue does not affect the whole of her testimony or rise to a level that warrants a re-evaluation of the chancellor's credibility determinations.

Although we find error in the chancellor's interpretation and application of Tennessee Code Annotated Section 45-2-703, this error did not yield an erroneous result. Further, we cannot say the evidence preponderates against the chancellor's findings of fact. Indeed, the pivotal findings relating to Mr. Nelson's intent depend upon the court's credibility assessment of Ms. Patterson, whose testimony in general remained unrebutted and whose statements about Mr. Nelson's intent were minimally impeached. The record lacks clear and convincing evidence compelling us to re-evaluate that credibility assessment and reverse the findings pertaining to Mr.

-18-

Nelson's intent. Accordingly, we affirm the chancellor's judgment with respect to CD numbers 10359, 10439, and 10491.

### C. Ownership of Certificate of Deposit Number 10398, Payable to "Harris Nelson"

On January 3, 1998, Mr. Nelson purchased CD number 10398. Of the four CDs at issue, this CD was the second one purchased and the only one made payable only to Mr. Nelson. As discussed above, Ms. Patterson testified that Mr. Nelson approached her one day in the bank to discuss his desire to leave all of his assets at Medina Banking Company to his sister and to express his particular concern about the CD listing him as the only payee. At that time, Ms. Patterson suggested that they modify the CD by checking two boxes ("Existing" and "Time Deposit") on the Consumer Account Agreement that he had previously completed when opening his checking account. She explained (and believed, according to her testimony) that this change to the Consumer Account Agreement would modify CD number 10398 so as to make it jointly held by Mr. Nelson and Ms. Little, with a right of survivorship. She checked the boxes in Mr. Nelson's presence, but did not initial or date the changes. When questioned by Mr. Nelson, Ms. Patterson assured him again that this modification would effect the change he had requested.

The Estate challenges the chancellor's ruling on CD number 10398 and advances various arguments. First, it contends that the written contract embodied by the CD is unambiguous, and the plain meaning of its terms should control. It also asserts that Tennessee Code Annotated Section 45-2-703 does not apply to this CD because it does not come within the scope of the definition of a multiple-party deposit account. The Estate argues further that, as a matter of law, the Consumer Account Agreement cannot modify the express terms of the CD, a written contract. Moreover, it urges, with thirty-six (36) month terms, the CDs came within the statute of frauds as agreements not to be performed within one year, and, because of this, the modification also came within the statute. It contends the modification violated the statute of frauds because the writing, consisting only of check marks, was insufficient and not signed by Mr. Nelson. Finally, the Estate argues that this method of modification constituted a violation of federal and state banking laws and should be void as a result.

In essence, we view the Estate as invoking the parol evidence rule and the statute of frauds. And aside from these arguments, it challenges Ms. Patterson's testimony as inadmissible hearsay and, in any event, insufficient proof of the creation of a right of survivorship under *Barnhart v. Newman, supra.*[10] Finally, the Estate claims the modification is void for illegality.

We begin with the Estate's contention regarding the applicability of Tennessee Code Annotated Section 45-2-703, as we have discussed its provisions at length and believe it helpful to explain how the instant issue stands in relation to the statute. First, the Estate's brief cites only

---

[10]We will not address the hearsay argument and the Estate's reliance on *Barnhart*, as we have already disposed of both contentions.

the definition of a multiple-party deposit account and omits the operative language in subsection (d)(1), which extends the statute's scope to the "opening [of] a multiple-party deposit account [and the] *amending [of] an existing deposit account so as to create a multiple-party deposit account*." Tenn. Code Ann. §45-2-703(d)(1) (2000)(emphasis added). Notwithstanding the statute's applicability in theory, the issue before us involves a primarily oral amendment to, or modification of, a written contract. Because the central focus of the statute is the clarity of ownership interest designations on accounts bearing two or more names, the question of its applicability misses the heart of the issue we must resolve. CD number 10398 bore the name of only one payee, so we must focus on the issue of whether an oral amendment to the CD created a multiple-party deposit account. Only then do we broach the issue of the nature of Ms. Little's ownership interest as proven by oral testimony. Thus, the subject of word choice on bank account documents has little relevance here. We next address the parol evidence rule and statute of frauds.

With respect to the applicability of the parol evidence rule and the statute of frauds, this tort case presents a challenge because its resolution requires a determination of contract rights. Under Tennessee law, however, the parol evidence rule and statute of frauds apply only in suits for the breach or enforcement of a contract and are thus inapplicable to tort claims. *Jarrett v. Epperly*, 896 F.2d 1013, 1019 (6th Cir. 1990); *Haynes v. Cumberland Builders, Inc.,* 546 S.W.2d 228, 231 (Tenn. Ct. App. 1976) ("The appellant next argues that the admission into evidence of the Haynes-Appleton conversation contravened the Parol Evidence Rule and the Statute of Frauds. This argument is meritless. This case is sounded in tort. It is an action for fraudulent misrepresentation. The Parol Evidence Rule applies to suits on a contract  . . .   For the same reasons as enumerated above, the Statute of Frauds is not available to the defendant-appellant." (citations omitted)); *Taylor v. Rapp*, Hamilton Law CA-756, No. 1987 WL 7959, at *2 (Tenn. Ct. App. Mar. 19, 1987).  Under this authority, the Estate may not use the parol evidence rule or the statute of frauds to make its case.  Even without this authority, we would decline to apply them in any event.

Viewed solely from a contract law perspective, the evidence pertaining to Mr. Nelson's intent is not subject to the parol evidence rule because his agreement with Ms. Patterson was a subsequent modification of a written contract. The parol evidence rule prevents contracting parties from using extraneous evidence to alter or vary the terms of an integrated, unambiguous contract. *See GRW Enters., Inc. v. Davis*, 797 S.W.2d 606, 610–11 (Tenn. Ct. App. 1990) (citing *Jones v. Brooks*, 696 S.W.2d 885, 886 (Tenn. 1985)).  The rule does not, however, prevent the use of extraneous evidence to prove a separate  agreement made after the written one. *Id.* (citing *Brunson v. Gladish,* 125 S.W.2d 144, 147 (Tenn. 1939)).  Parol evidence is admissible to prove a subsequent modification to a written contract, as it is itself a separate contract. *Id*

The statute of frauds makes "certain agreements unenforceable through suit unless they are evidenced by a signed memorandum." *Id.* at 612.  The Estate cites Tennessee Code Annotated Section 29-2-101(a)(5), which provides that "[n]o action shall be brought . . . [u]pon any agreement or contract which is not to be performed within the space of one (1) year from the

making of the agreement or contract" unless the agreement is memorialized in a writing and signed by the party to be charged. *See* Tenn. Code Ann. § 29-2-101(a)(5) (2000 & Supp. 2006). As noted above, the statute applies only in enforcement or breach of contract actions and serves as a defense in such actions. This is an action in conversion.

Assuming *arguendo* that the modification is unenforceable, then the contract would be voidable at the option of the bank, as Ms. Little would be the party seeking to enforce it. *Accord Anderson v. Hacks Crossing Partners,* 3 S.W.3d 482, 485 (Tenn. Ct. App. 1999)(noting that the statute of frauds renders oral contracts for the sale of land voidable at the election of either party, but not void ab initio). But the bank does not dispute the validity or terms of the modification, so an application of the statute in this case would render a voidable contract void ab initio. This strains the statute to a point we are unwilling to reach. The Estate charges that a refusal to apply the statute in this case would result in a "Pandora's box of potential fraud and . . . flood of litigation." Even though we decline to apply the statute here, this result does not work to encourage fraudulent bank practices. Institutions that disburse funds to individuals not listed as payees or owners of the account do so at their own peril, in light of their potential liability to depositors for improper payments.

As to the allegation of the modification's illegality, the Estate has cited no law or authority for our review in this matter. At the conclusion of Ms. Patterson's final cross-examination, she conceded, in the words of counsel, to "assist[ing] Mr. Nelson in avoiding an interest penalty that's required by the federal and state banking regulations" by modifying the CD via the account agreement rather than requiring its re-issuance. Presented with an argument lacking in citations to authority, we are not inclined to survey federal and state banking law to supplement the Estate's case. We also decline to declare a contract void based on Ms. Patterson's concession during cross-examination. We need not address this argument further and so turn next to the issue of proving an oral modification of this nature.

"After a written contract is made, it may be modified by the express words of the parties in writing, as well as by parol." *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. Ct. App. 1990)(citing *Co-Operative Stores Co. v. U.S. Fid. Guar. Co.*, 195 S.W. 177, 180 (Tenn. 1917)). Both parties must consent to such modifications, whether oral or written. *Id.* at 92. Even where the written contract prohibits oral modifications of the agreement, oral alterations will still be given effect if otherwise valid, as "men cannot tie their hands or bind their wills so as to disable them from making any contract allowed by law, and in any mode in which it may be entered into." *Co-Operative Stores Co.*, 195 S.W. at 180 (quoting *Am. Cent. Ins. Co. v. McCrea, Maury & Co.*, 76 Tenn. 524 (1881)(citations omitted)).

Where the statute of frauds is inapplicable, a writing is not generally required to enforce a contract. *Burton v. Warren Farmers Co-op*, 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002). A party seeking to enforce an oral agreement must establish mutual assent to sufficiently definite terms. *Id.* The CD modification itself is a contract that must be proven as any other oral contract. Although modifications, like other contracts, also require consideration, 17A C.J.S.

-21-

*Contracts* § 411 (1999), the parties make no mention of this element. In this case, the record must establish an agreement to modify the terms for transfer[11] as stated on the face of the CD; an agreement to change the CD from a single-party deposit account to a multiple-party deposit account by adding Ms. Little as a payee; and an agreement to make Ms. Little a donee third-party beneficiary of the contract by establishing a joint tenancy with a right of survivorship. We believe the record supports the chancellor's finding of an effective modification.

The record reflects an agreement to modify the transfer term on the face of the CD, as Ms. Patterson testified that Mr. Nelson sought and received her assurances that the use of the account agreement would be effective. And Ms. Patterson's testimony regarding her justification for modifying the CD in that manner (to avoid a penalty) likewise evinces the conscious decision to deviate from the stated transfer method. It is clear from the record that the parties agreed to modify the CD in a manner contrary to the transfer term and proceeded to do so.

In addition, the testimony of Ms. Patterson reflects mutual assent as to the addition of Ms. Little as payee (thus making the CD a multiple-party deposit account) and the creation of a joint tenancy with a right of survivorship. The fact that Mr. Nelson explicitly stated that he wanted his money to go to his sister and was concerned about the CD payable only to him indicates that he sought this specific type of change. Moreover, he had established a checking account explicitly designated as a joint tenancy with right of survivorship and, at the time of modification, had purchased two or three other CDs of a similar nature. These surrounding circumstances suggest that Mr. Nelson made a knowing request and understood the effects of this change. Further, Ms. Patterson testified to the conversation in which she discussed the proposed modification with Mr. Nelson. Their exchange revealed a common understanding of what Mr. Nelson desired and an agreement to make that change.

Finally, we note that most, if not all, of the evidence supporting this analysis rests upon the credibility of Ms. Patterson as a witness. As we stated previously, our review of the record yields no reason to re-evaluate the weight accorded to her testimony by the chancellor. We therefore affirm the chancellor's finding as to the ownership of CD number 10398.

Our affirmance of the chancellor's findings regarding ownership of the CDs pretermits the need to address the fraud and breach of fiduciary duty claims.

---

[11] The transfer term provided that "[t]his certificate is transferable only on the books of this bank, in which event a new certificate of like tenor and amount will be issued to the transferee."

*Conclusion*

With respect to CD numbers 10359, 10439, and 10491, Medina Banking Company's use of "or" to reflect a joint tenancy with right of survivorship did not comport with the designation requirements of Tennessee Code Annotated Section 45-2-703, thus giving rise to a rebuttable presumption of nothing more than a power of attorney in Ms. Little. We hold that Ms. Little nevertheless established her right of survivorship and owned the CDs outright at the death of Mr. Nelson because the clear and convincing oral testimony of Ms. Patterson, who issued the CDs and discussed with Mr. Nelson his intentions in listing his sister as a payee, rebutted the presumption.

Moreover, in this tort action between will beneficiaries and the purported third-party beneficiary of CD number 10398, the parol evidence rule and statute of frauds are inapplicable because this is not a suit on the contract itself; this presents a question of subsequent modification; and the posture of the parties would prevent application of the statute of frauds in any event. Ms. Patterson's testimony regarding her dealings with Mr. Nelson revealed their mutual assent to deviate from the CD's transfer term in modifying it, to change the CD to a multiple-party deposit account by adding Ms. Little as a payee, and to create a joint tenancy with a right of survivorship. We concur in the chancellor's findings of fact regarding Mr. Nelson's intent because they rest upon on Ms. Patterson's credibility as a witness, which we decline to re-assess in light of the record as a whole.

For the foregoing reasons, we affirm the chancellor's order. Costs of this appeal are taxed to the Estate of Paul Harris Nelson and its surety, for which execution may issue if necessary.

 

 

_____
DAVID R. FARMER, JUDGE